## A. A. SPANGLER v. THE STATE.

No. 2261. Decided October 17, 1900.

Motion for Rehearing Decided March 13, 1901.

**1. Murder—Evidence—Impeachment of Witness.**

On a second trial for murder where the State had abandoned its previous theory of a murder for purposes of robbery, and had introduced no testimony as to a robbery of deceased, it was incompetent and inadmissible for defendant to prove, by witnesses, what occurred at the former trial with reference to the proof then offered by the State as to the robbery; and such evidence was not competent to impeach a State's witness of conspiracy to fabricate testimony against defendant, or to show a motive on his part and thereby affect credibility, where there was a total absence of any evidence of such conspiracy or motive on his part to give false testimony; and, where there was no testimony connecting or implicating him with the supposed robbery by other parties, although there might be evidence of subsequent matters tending to show that such other parties had committed the robbery.

**2. Manslaughter—Charge—Adequate Cause—Insult to Female Relative.**

Where the court has charged the jury, that, if there were several causes, whether all of them arose at the time of the killing or not, and although, alone, none of them might be sufficient adequate cause for the sudden passion essential to manslaughter, yet, the jury might consider them, in the aggregate, in determining that issue; and further instructed them that unless the insulting language concerning a female relative, which defendant claimed as one of the causes, was the real cause of the killing, it would not be sufficient to reduce the offense to manslaughter; Held, that, taking the charge in its entirety, it did not restrict the jury to this latter issue, nor limit them to the provocation arising at the time of the killing, nor cut them off from the consideration of defendant's claim of self-defense against an assault made upon him by deceased. It sufficiently embraced all the other circumstances.

**3. Same—Burden of Proof.**

On a trial for murder, where the court, in charging upon manslaughter, instructed the jury, that, to warrant a conviction, they must find the necessary facts beyond a reasonable doubt, this did not shift the burden of proof and require defendant to prove manslaughter beyond a reasonable doubt before they could acquit of murder.

**4. Same—Self-Defense.**

On a trial for murder, where self-defense is relied on, the facts constituting manslaughter must be proved beyond a reasonable doubt before the jury would be authorized to disregard that plea and convict of manslaughter.

**5. Same—Charge—Malice.**

On a trial for murder, where the court defined "malice" to be "a wrongful act intentionally done without just cause or excuse," and also charged fully upon express and implied malice, the jury were not necessarily, under the general definition of malice, more liable to find defendant guilty of murder in the second degree than manslaughter, but would be more likely to find manslaughter.

**6. Murder in Second Degree—Charge.**

On a trial for murder, where it was conceded that defendant killed deceased, and which killing, if culpable, was done in sudden transport of passion, and was either manslaughter or self-defense according to defendant's theory, and the court instructed the jury, "If defendant killed deceased in a sudden transport of passion without adequate cause, etc., and not in defense of himself, etc., they will find defendant guilty of murder in the second degree," Held, defendant could not complain that said charge restricted the jury, in murder in the second degree, to a killing in a sudden transport of passion, inasmuch as the said charge was in accord with the proof. Nor did it matter that, in this paragraph of the charge, the term "malice" was omitted, since malice, malice aforethought and implied malice had been fully defined in other portions of the charge.

**7. Same—Self-Defense—Character of Deceased—Charge.**

On a trial for murder, where defendant claimed self-defense against an attack made upon him by deceased, and the court's charge distinctly authorized the jury to judge of the character of deceased's attack upon defendant of the manner and character of defendant's knowledge, and the character and disposition of deceased; this fully authorized the jury to review all the testimony on the issue of the character and disposition of the deceased, her habit of going armed with a pistol, her disposition to use the same and her language at the time of the homicide; and, as to these matters, defendant has nothing to complain of said charge.

**8. Same—Conditional Threats by Deceased.**

It is not error for the court to fail to charge on threats by deceased in connection with defendant's claim of self-defense, where it appeared that such threats were conditional, and the condition had not occurred. But even if such threats were unconditional they could not intensify deceased's act where she advanced upon defendant and attempted to shoot him with a drawn pistol, because, in such event, his right of self-defense was perfect, and if defendant's theory was true, he did not need the threats to acquit him.

**9. Murder—Self-Defense—Manslaughter—Charge.**

On a trial for murder, where it appeared, from the evidence, that two shots penetrated deceased's body, one in front and one behind, and that the shots were fired in rapid succession, one of which, the first, might have been justifiable in self-defense, and the other not; Held, it was not error to refuse to charge, that, if defendant was justifiable as to the first shot, and that was the fatal one, and the second shot was not fatal, that the second shot should not be considered in determining whether the offense was murder; and, that as to the said second shot, the defendant could, at most, only be convicted of manslaughter.

**10. Same—Improper Argument—Requested Instruction—Practice.**

It is improper for a prosecuting attorney to assert, in his argument, his belief that defendant is guilty of murder, but, unless exception is taken at the time to such improper remarks, it is not reversible error to refuse an instruction, subsequently requested, instructing the jury not to consider such remark.

**11. Murder—Charge—Self-Defense.**

See opinion for a charge upon self-defense, which, taken as a whole, expressed the proper rule of law upon that subject, giving defendant the right to use all necessary force; the right to act upon reasonable appearance of danger; that he was not bound to retreat; that, if attacked by deceased, and he thereby had a reasonable apprehension of danger or serious bodily harm, to acquit; and, that if deceased made an attack upon him with a deadly weapon, the law presumed she intended to murder or inflict serious bodily harm, and it was immaterial whether the weapon was loaded or unloaded, provided defendant did not know it was not loaded.

**12. Witness—Opinion Evidence.**

It is not error to permit a witness not an expert to testify as to the angle a pistol ball took, which made a hole in the floor, since the matter was one simply of observation.

**13. Murder in the Second Degree—Evidence Sufficient.**

See opinion for facts stated, held sufficient to support a verdict and judgment of murder in the second degree with punishment affixed at fifteen years in the penitentiary.

ON MOTION FOR REHEARING.

**14. Several Bills of Exception—Incorrect Certificate of Judge as to One.**

Where the record contains more than one bill of exceptions, and the judge's certificate disallowing one of them states that he has no recollection of the admission of such testimony as is embraced in the bill, and a reference to the other bills allowed by him shows that such testimony had in fact been admitted, the certificate of the judge will be treated as a mistake and the disallowed bill will be considered in connection with the allowed bills.

**15. Constitutional Law—Right to Be Heard by Counsel.**

Section 10 of the Bill of Rights guarantees to an accused person the right to be heard by counsel. It is not the importance of testimony which authorizes its use in argument; and it is not within the power of any court, or of any judge, to prohibit counsel from arguing testimony which has been admitted in the case before the jury. The right to be heard by counsel is a sacred right, and when denied, will constitute cause for reversal.

APPEAL from the District Court of Clay. Tried below before Hon. A. H. CARRIGAN.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

Appellant was charged by the indictment with the murder of Mrs. S. E. Whitesides, by shooting her with a pistol on the 30th day of March, 1899.

This is the second appeal in this case. See Spangler v. State, 41 Texas Crim. Rep., 424. The essential facts pertaining to the killing will be seen by reference to the reported case on the former appeal, and a brief statement·will also be found recapitulated in the opinion below.

*Hurt & Stine, J. C. Hodges, J. A. Templeton, L. C. Barrett,* and *Stilwell H. Russell,* for appellant.—The court erred in refusing to admit the testimony of the witnesses, Teel, Worsham and Jackson, which, as is shown in bills of exception numbers 1 and 11, is to the effect that Frank and Walter King, sons of the deceased, had in their possession subsequent to the homicide and first trial of defendant money with blood stains upon it, and which could have been circumstantially shown to have been on the person of deceased at the time of the homicide and surreptitiously taken therefrom, and so taken with the guilty knowledge of State's witness, L. R. Smith, and under such circumstances as tended to show that the said Smith was a particeps criminis in the taking.

Evidence that tends to show a motive on the part of a witness, and thereby affecting his credibility, is relevant and competent.

Evidence that tends to show that the physical facts surrounding the homicide, and existing at the time of the homicide, were changed, is relevant and therefore competent, and especially so if it tends to show that such surroundings were changed for the purpose of fabricating testimony, no matter by whom the change was made. 3 Greenl. on Ev., 93; Roscoe, Crim. Ev., 7 ed., 415; Underhill, Crim. Ev., 549; Anarchist's case (Ill.), 12 N. E. Rep., 980; Peoples v. Bentley (Cal.), 17 Pac. Rep., 436; United States v. Doyle, 5 Fed. Rep., 680; Peoples v. Sanders, 25 Mich., 119; Bonnard case, 25 Texas Crim. App., 195; White's Ann. Code Crim. Proc., sec. 1108; 7 Texas Crim. App., 41; 4 Texas Crim. App., 366; 15 Texas Crim. App., 235.

Complaint is made of the errors raised in the third and seventeenth clauses of the motion for a new trial, which complain of the eighth

paragraph of the charge of the trial court, "wherein the court instructs that the provocation must arise at the time of the killing, and the passion is not the result of a former provocation, and the act must be directly caused by the passion arising out of provocation, if any, at the time of the killing, and it is not enough ·that the mind is agitated by passion arising from some other provocation"—meaning the provocation happening at the time of the killing. Under the facts of this case, such an instruction is not only erroneous, but has no legitimate place in the charge. The language used is imperative in stating to the jury that before there can be adequate cause it must arise from a provocation given at the time of the killing. The instruction is erroneous because it confuses and misleads, and it is diametrically opposite to the latitude given the jury, prompting them to look to other conditions and circumstances that would, in the opinion of the jury and the jury alone, constitute adequate cause—in other words, the jury are at liberty to reject all other conditions and circumstances that would in law constitute adequate cause and at the same time be impelled to obey the instructions, that the provocation must arise at the time of the killing, and the passion must spring out of that particular provocation. The instruction is erroneous because it makes every other condition or circumstance that the jury could look to in determining if adequate cause existed, subordinate to its requirements.

The court erred because it limits and restricts the effect of passion aroused from insulting language, by requiring the killing to take place instantly upon the telling of the insulting words. Such is error, because it instructs that unless the insulting words were the real cause of the killing there can be no passion arising from such a cause.

· · Insulting language to the female relative is the adequate cause, and passion is but the result of the cause. Insulting language and passion may exist and yet the killing may not immediately follow; but if they do exist, the condition of the mind, 'which regulates the culpability of the homicide, is not changed. If contemporaneously with the insulting language there is also an attempt to kill, and such an attempt that would succeed, but the impulse of self-protection moved the defendant to shoot, to do so would not prevent the homicide being manslaughter, although the jury should not believe he acted in self-defense.

If insulting language did not produce the degree of anger and passion mentioned in the statute, or if it did produce it, it was not the real or only cause for killing, yet if at the time there are acts coupled with words sufficient to arouse terror, and in such a state of mind the defendant, because of the fear created, believed himself in danger, but the jury, not believing that his fears and belief were reasonable, his offense would be no greater than manslaughter. Alexander case, 25 Texas Crim. App., 206; Richardson case, 28 Texas Crim. App., 221; Howard case, 23 Texas Crim. App., 279.

The court erred in the instruction on manslaughter, as stated in said

clause, in requiring the jury to believe beyond a reasonable doubt from the evidence, not only that the defendant killed Mrs. Whitesides, but that at the time of the killing he was moved by an adequate cause to do so, and was moved to such a degree of anger, etc., as to render him incapable of cool reflection, and that if in such a state of mind the killing took place he should be found guilty of manslaughter.

Manslaughter being defensive matter as against murder, it was erroneous to require the jury to believe beyond a reasonable doubt that the elements reducing the offense to manslaughter existed.

·It is error to instruct that it was his duty to show (being defensive matter), beyond a reasonable doubt, that such elements did exist. Rockhold case, 16 Texas Crim. App., 585; Morgan case, 16 Texas Crim. App., 622-3; White case, Texas Crim. App., 154, 643; Shamburger case, 24 Texas Crim. App., 154; Johnson case, 29 Texas Crim. App., 153; Eden v. State, 55 S. W. Rep., 815; Dyson v. State, 13 Texas Crim. App., 402; Johnson v. State, 43 Texas, 615; Guffee case, 8 Texas Crim. App., 208.

He erred in not instructing that appellant had the right to take into consideration the language used by deceased at the time of the homicide, and connected with her attack, wherein she characterized his wife as a whore and his daughters as bitches, in determining the purpose and character of the attack.

The assignment suggests the proposition of law appellant was entitled to have submitted in the charge.

By reference to the charge it will be seen in paragraph 14a that the court limits the matter complained of to the "manner and character of the attack and the defendant's knowledge of the character and disposition of deceased." 39 Texas Crim. Rep., 188, 189; 9 Texas Crim. App., 597; 11 Texas Crim. App., 292; 14 Texas Crim. App., 17; 18 Texas Crim. App., 653; 18 Texas Crim. App., 652; 28 Texas Crim. ·App., 133; 15 Texas Crim. App., 1.

The court erred in omitting to instruct the jury upon the law of threats, as shown in our thirteenth clause motion for a new trial.

· Where the threat to take life or do serious bodily injury is in evidence, the jury should be instructed that if they believe the threats had been made, and if such threats had been made and there was an act upon the part of deceased reasonably indicating to the defendant and inducing the belief on his part that the threatened attack had begun, he had the right to act instantly in his defense with the most effective weapon at his command, and the homicide, under such conditions and circumstances, was justifiable.

It seems that the deceased charged appellant with the purpose of having her sons indicted for some crime, and she continually referred to such purpose of defendant. Because of this, on the day prior to the homicide, she seriously told him that if he had her sons indicted he would not live to testify against them. It was in evidence that,

just before she used the vile insults about his wife and daughters and sprang upon defendant with the pistol, that the subject of the threat was upon her mind when she asked defendant if he intended to have her sons indicted, or if he had been before the grand jury about it, which elicited the reply from defendant to the effect that he did not intend to harbor horse thieves, to which she retorted with a vile insult, springing up at him with pistol in hand. McFain case, 41 Texas, 385; 18 Texas Crim. App., 584, 156, 652; 24 Texas Crim. App., 253, 350, 274; 32 Texas Crim. Rep., 25; 23 Texas Crim. App., 265; 28 Texas Crim. App., 134; Horback case, 43 Texas, 260; Johnson case, 27 Texas Crim. App., 757; Haynie case, 2 Texas Crim. App., 176.

The court erred in the fourth paragraph of the charge, wherein he instructs that "malice, in the legal sense, denotes a wrongful act done intentionally without just cause or excuse."

There is no malice in manslaughter, and yet it is a wrongful act, done intentionally, without just cause or excuse.

A wrongful act done intentionally, without extenuation, just cause or excuse, is upon malice, if the act is done in pursuance of a previously formed design.

Where there is extenuation or mitigation, and the absence of justification or excuse, the act is not upon malice; hence the definition of the court is error. Richardson case, 28 Texas Crim. App., 222; Smith case, 19 Texas Crim. App., 110; McGrath case, 35 Texas Crim. Rep., 423, 424.

Assuming that the court in the second, third, fourth, and fifth paragraphs of the charge defined the terms malice correctly, yet in applying the law to the facts in the sixth paragraph, the court erred in omitting to insert that the killing must be on malice before the conviction could be had.

A homicide not upon malice is not murder.

Before it can be said that the charge contains the law applicable to the case it must, when applying the law to the facts, define the elements of the crime in the issue submitted.

Abstract definitions of malice in separate and distinct paragraphs of the charge do not suffice when in the separate paragraphs the court attempts to characterize the offense committed, and especially when there is nothing in the paragraph in which the offense is characterized that shows the relation of malice to the issue under consideration.

The sixth paragraph instructs the jury that "if they believe beyond a reasonable doubt, etc., that the defendant did unlawfully shoot and kill the deceased with a pistol, as charged in the indictment, in a sudden transport of passion, aroused without adequate cause (as that term is explained), and not in defense of himself, they will find the defendant guilty of murder in the second degree." Shrivers' case, 7 Texas Crim. App., 455, 456; Kemp's case, 13 Texas Crim. App., 563, 579; McGrath v. State, 35 Texas Crim. Rep., 423, 424.

The court erred in paragraph 14a of the charge, the point reserved in the motion for a new trial in the limitations and restrictions therein shown in this—it limited the character of the attack and how much the defendant may have believed and feared it, to his knowledge of the character and disposition of deceased.

It erred in not instructing that the appellant had the right to take into consideration the habit of deceased in going armed, her capacity for using a pistol, her prior attack with a deadly weapon upon others, her threats, and conduct, connected with such threats, and, in a word, he had the right to consider all the facts and circumstances in evidence to determine the manner and character of the attack.

The court erred in omitting to instruct the jury, as applicable to the issues of self-defense and manslaughter, the principles of law embodied in the motion for a new trial. In brief, the instruction should have been, if the jury believe from the evidence, or have a reasonable doubt of the fact that defendant, while acting under the reasonable apprehension or fear of death or serious bodily injury, fired the first shot, and that the same was fired in his lawful self-defense, then in such event the first shot was justifiable; and should the jury believe or have a reasonable doubt of the fact that said first shot was inevitably fatal and that death was a necessary result of said first shot; and should also believe that the second shot was fired by defendant, but that the second shot did not inflict a mortal wound, then in such case the firing of the second shot was immaterial in determining whether defendant was guilty of murder or not. That if the jury believe beyond a reasonable doubt that said shot was fired by defendant, and it reasonably appeared to him that he was out of danger, and that said second shot inflicted a mortal wound, but believe, or have a reasonable doubt thereof, that at the time he fired the second shot his mind had been rendered incapable of cool reflection by the unlawful and violent attack, if any, and by the surrounding facts and circumstances taken together, then in such case he could not be found guilty of a higher degree of homicide than manslaughter. In this connection we complain that the court erred in failing to instruct the jury as requested in special charge number 3, referred to in the ninth clause of the motion for a new trial, which instruction was pertinent to the number of shot fired and the fatality of the first shot as distinguished from the second shot. Hobbs case, 16 Texas Crim. App., 523; Gregory case, 48 S. W. Rep., 579; West case, 2 Texas Crim. App., —.

Bill of exceptions number 10 sets out in detail the language used by counsel, and in said bill is the language of both the district attorney and the county attorney of Clay County, which was repeated by them several times in their argument, and which was, "Defendant is guilty of murder; I believe him guilty." The bill further admits that in order to remove the improper influence of above statements upon the jury, the defendant, immediately after the reading of the court's charge

and before the jury retired to their room, requested the court to charge the jury the following, which was signed by counsel and refused by the court: "State's counsel in this case have stated to you that they believe the defendant guilty, and the court instructs you that you will not consider that statement while making up your verdict." Wright case, 33 Texas Crim. Rep., 427; Cooksie case, 26 Texas Crim. App., 72; Young case, 19 Texas Crim. App., 536; Kennedy case, 19 Texas Crim. App., 618; Franklin case, 38 Texas Crim. Rep., 346; Cooksie case, 26 Texas Crim. App., 81.

The court erred in the fourteenth paragraph of the charge wherein it instructs that a reasonable apprehension of death or great bodily harm will excuse a party in using all necessary force in protecting his life and person. This instruction is too restrictive and places a limitation upon the rights of defendant, who is authorized to use such force as may reasonably appear to him to be necessary. This instruction is therefore error, because it permitted the jury to say that the killing could have been avoided, even if there was danger, by the defendant's using requisite force, or by resorting to other means. Under the instruction, if the jury should have believed that the pistol was unloaded, then as a matter of fact they had a right to conclude from the instruction that the defendant used more force than was necessary.

The court erred in admitting over the defendant's objection the testimony of the witnesses Weldon and George, as to show what in their opinion was the range of the bullets fired by defendant which made the hole found in the floor. This error is reserved in clause 14 of the motion for a new trial.

The court erred, having admitted the testimony complained of in clause 14 of the motion, in refusing to give special instruction marked number 5, as shown in clause 15 of the motion for a new trial, instructing the jury not to consider the testimony of the witnesses Weldon and George as to their opinion concerning the range of the bullet.

*Rob't A. John,* Assistant Attorney-General, for the State. [No brief found with the record.—Reporter.]

HENDERSON, Judge.—This is the second appeal. On the former appeal appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of fifty years, and the judgment was reversed by this court at the Dallas term, 1900. 41 Texas Crim. Rep., 424. On the present trial appellant was convicted of murder in the second degree, his punishment being assessed at fifteen years' confinement in the penitentiary, and he prosecutes this appeal.

For a full statement of the facts of the case, see the former appeal. Briefly stated: Deceased, a woman, was a tenant of appellant, or,

rather, employed by him to cook for the hands on his place. They had some disagreement, and several quarrels, during the two days preceding the homicide, but on the morning of the homicide the evidence tends to show they were reconciled. The killing occurred in the kitchen attached to the residence on the premises, while no one was present but deceased and appellant. Two short were fired, one entering in front, near the region of the heart, and the other from the rear. Deceased immediately ran out of the kitchen onto the gallery, and fell on the ground, where she expired. Appellant at once left the kitchen, proceeded to the lot, a short distance away, reported the killing, and then went to Henrietta, the county seat, and surrendered. He testified, and his evidence tends to show self-defense. There is also some testimony by defendant and other witnesses tending to show manslaughter. The State insisted that the offense was murder, and supported its theory by facts and circumstances tending to show that offense.

In discussing the assignments raised, the arrangement thereof as contained in appellant's brief will be substantially followed.

Appellant's bills of exception numbers 1 and 11 relate to the refusal of the court to permit defendant to prove by certain witnesses what had occurred at the former trial of the case with reference to proof offered by the State tending to show that appellant had killed deceased for the purpose of robbery. In substance, said evidence was to the effect that deceased was in the habit of carrying a large amount of money in her bosom, and that at the time of the homicide she had about $170 on her person; that after she was killed her body was examined, and the bills were gone. In this connection, it was shown that her two sons, Frank and Walter King (who were not witnesses on this trial), and L. R. Smith, were with the body immediately after the killing until it was examined and the money found missing. It was further offered to supplement this proof with evidence which transpired subsequent to the former trial, to the effect that the King boys had no money before the death of their mother, and that thereafter they passed to certain parties, to wit, Stephen Teal and W. B. Worsham, certain currency bills, which had blood stains, or the appearance of blood stains, on them. The bill also shows that the witnesses Frank and Walter King (sons of deceased) were present and under rule at this trial, but the State did not introduce them as witnesses, and the theory of robbery was not presented or relied on by the State. L. R. Smith, witness on the former trial, was introduced by the State as a witness at the present trial, and the bill shows that in the former trial he was used by the State, and testified, in effect, that immediately after the shooting he went to the body of deceased, and was with the body for a time with Frank King; that together they carried the body from the kitchen into the main house, and laid it on a cot; that, shortly after he and Frank King went to the body, Frank King went in through the kitchen

to the main room, and fixed the cot; that directly he came out, and he and said witness carried the body into the house, and laid it on the cot; that said witness during the time he was in the kitchen, in passing to the room where the cot was situated, was under the observation of witness, and if he touched anything in the room witness did not observe it. This witness also testified that Frank left him with the body, and went for his brother Walter, and in a short while returned with Walter, when he (Smith) left the place to go for the officer, leaving Frank and Walter alone with the body. Appellant also, in this connection, offered to make profert of some of the bills passed to Worsham and Teal, said bills showing appearance of blood stains. All this testimony was, on objection, excluded by the court.

Appellant insists the court committed an error, because he says said testimony was admissible as tending to show a motive on the part of Smith, and thereby affecting his credibility, and it was further admissible as tending to show that the physical facts surrounding the homicide, and existing at the time of the homicide, were changed for the purpose of fabricating testimony, and that such evidence was admissible, no matter by whom the charge was made, whether by Smith or some one else. In arguing the first of these propositions, appellant says: The witness Smith was evidently engaged in the conspiracy with the King boys, and his relation to them was either prompted by motive of gain, or a motive to shield them, or to fabricate or suppress evidence which, in either event, would be prejudicial to appellant. Now, in reply to this, we have to say that we have examined the record carefully in order to ascertain if there was any testimony showing witness Smith was engaged with the King boys in the conspiracy either to rob the body of deceased and attribute it to appellant, or, if he was not engaged in such robbery with the King boys, if he afterwards engaged in the conspiracy to fabricate testimony for the purpose of shielding them, and laying the robbery on appellant. We must confess that we fail to find any such testimony. It would certainly be an effectual way of impeaching the credit of Smith, if it should be shown that he entered into a scheme of the character charged against him in appellant's brief; but, in our opinion, the circumstances do not tend remotely to show such conspiracy. It is true he was introduced as a witness on the former trial, and on this trial by the State, but he seems to have testified fairly then and now, and because he was a State's witness affords no reasonable ground that he had entered into a conspiracy to commit a robbery or to fabricate testimony. He happened to be on the place at the time, went immediately to the body, and his acts and conduct there do not suggest that he had any improper motive in being there; and instead of excluding the idea that the King boys did not commit the robbery themselves, his testimony afforded them the opportunity to have done so. While he says the body was not disturbed, and no search made

during his presence, yet he left these parties with the deceased, which gave ample opportunity to take the money and appropriate it to their use and afterwards conceal the fact, and by their evidence attempt to lay it on defendant. So there is a failure to show any scheme on his part to exonerate the King boys in this regard, and after this there is no testimony showing that he had anything to do with said money, or that he had any knowledge the King boys had abstracted it from the body. We do not think we are authorized, in the absence of evidence, effecting a witness only by mere surmises, to introduce against him, for the purpose of impeachment, testimony concerning matters with which he had nothing to do. If the King boys had been introduced as witnesses, then this character of evidence would have been admissible for the purpose of impeaching them, but, in the absence of any testimony implicating Smith, it would not render the testimony admissible for the purpose of impeaching him. Furthermore, if the State had relied on the theory of robbery in the perpetration of the homicide on the present trial, and had introduced evidence remotely tending to show that the homicide was committed for the purpose of robbery, then all the evidence concerning said robbery would have been admissible in defense as original evidence. But, as stated before, this theory was not relied on, and it was entirely competent for the State to abandon it, if it desired to do so. Nor does the record in this case disclose any physical circumstances, in connection with the abstraction of the money from the bosom of deceased, that would tend to throw any light on the commission of the homicide or the manner in which it was done. There is no pretense that anyone else, save appellant, did the killing; in fact, he admits he did. The location of the wounds is not controverted, and the fact that deceased's dress in front of her bosom was loosened or disarranged when the body was examined by the officers comports with appellant's own testimony that she drew a pistol from her bosom. Moreover, testimony concerning this matter would have nothing to do with the physical objects in the kitchen where the homicide occurred, such as the arrangement of the chairs, their presence or absence from the kitchen, or the finding of the pistol in the kitchen. So from any point of view it occurs to us that the court did not err in excluding the testimony as presented in these two bills of exception.

Appellant complains, in his second assignment of errors, that the charge of the court on manslaughter was too restrictive, in that it confined the jury to the provocation at the time of the homicide. Appellant concedes that the jury was instructed in the eleventh paragraph of the charge to the effect that if there were several causes to arouse passion, whether arising at the time of the killing or not, and although none of them alone would constitute adequate cause, the jury might take into consideration all the facts, etc., to determine the issue of manslaughter. But he insists that, notwithstanding this, the charge was not adequate on account of the peculiar circumstances of this case; that

in this case insulting language to a female relative was relied on. But it will be seen, from an inspection of the charge, that this phase of the case was presented to the jury, and there is no controversy but that this insult was used by deceased at the .time of the homicide, if defendant's testimony is to be believed, and they were fully authorized to look back to previous provocations of a similar character as intensifying this accusation made at the time. Nor, in our opinion, was appellant, if we review the entire charge, cut off as to this matter, of manslaughter. from the assault testified to by appellant as then being made on him by deceased. They could look to this and all other matters, and the fact that the court instructed them, in connection with the charge of insulting words, "that, unless the insulting words were the real cause of the killing, it would not reduce the offense." This is the language of the statute on this subject, and, if appellant relied exclusively on insulting words, these must be the real cause of the killing. But, if there were other circumstances in connection with this, in our opinion the charge was sufficiently comprehensive to embrace these other circumstances. We think the charge of the court is in accord with the authorities on this question cited by appellant. See Bracken v. State, 29 Texas Crim. App., 367; Johnson v. State, 22 Texas Crim. App., 206. It is certainly in consonance with the principles of law on this subject. Miles v. State, 18 Texas Crim. App., 170. We quote from that case as follows: "Now, while it is true that the provocation must arise at the time of the commission of the offense, and the passion must not be the result of a former provocation, yet in passing upon the sufficiency of the provocation, and on the effects of the passion upon the mind of the defendant, the past conduct of the deceased towards defendant, his threats and bearing, in fact all the facts and circumstances in the case, should be considered by the jury, and acts standing alone may not be a sufficient provocation, but may be ample when it is one of a series of similar acts, or when it has been preceded by an insolent and aggravating course of conduct, whether similar or not to the act committed at the time of the homicide." The court seems to have followed this enunciation of the law; that is, there must be a provocation arising at the time of the homicide, but the jury were expressly told they could look to all the facts and circumstances of the case as shedding light upon that provocation.

Again, appellant complains of the court's charge on manslaughter, and claims that the charge puts the burden of proof upon appellant to establish his defense of manslaughter beyond a reasonable doubt before the jury will be authorized to acquit him of murder. The argument of appellant, it occurs to us, is more ingenious than sound. He says that manslaughter is a defense to murder, and that consequently the charge of the court applying the law to the facts, which instructed them, in effect, if they believed beyond a reasonable doubt the killing occurred under certain circumstances (agreeing with the definition of

manslaughter), to find him guilty of that offense, is shifting the reasonable doubt on the defendant. By analogy, we take it, he would claim that murder in the second degree is a defensive matter to murder in the first degree, and that a charge of the court which instructed the jury they must find the elements which constitute murder in the second degree beyond a reasonable doubt, before they would be authorized to find defendant guilty, would be shifting the rule as to reasonable doubt, because murder in the second degree is a defense against murder in the first degree. The charge complained of was a charge on manslaughter, and it was simply an instruction to the jury that they must believe beyond a reasonable doubt that the evidence showed the elements of manslaughter as defined, before they could convict appellant. Of course, we do not think the jury could have misapprehended this charge, and there is no complaint but that the jury were distinctly told, if they had a reasonable doubt of the guilt of appellant of any grade of felonious homicide, to acquit him. In this connection, we would say we find no fault with reference to the authorities cited by appellant in his able brief, but we can not agree to their application to the charge in question. While it is true that passion engendered by adequate cause in one sense is defensive matter, yet they are affirmative facts to be proven in order to obtain a conviction for manslaughter; and where self-defense is relied on, as in this case, these facts constituting manslaughter must be proven beyond a reasonable doubt before the jury would be authorized to disregard the plea of self-defense and to convict of manslaughter. They are affirmative facts entering into the definition of manslaughter, and should be proven in order to convict of that offense, and in this connection it does not matter whether the proof comes from the State or appellant.

Appellant complains of the court's definition of "malice." The court gave the stereotyped definition on this subject, to wit, "that 'malice,' in its legal sense, denotes a wrongful act done intentionally, without just cause or excuse." The court also gave a full charge on express and implied malice and malice aforethought, and it does not occur to us that because of this general definition of malice, as above quoted, the jury were liable to find appellant guilty of murder in the second degree instead of manslaughter. It would appear that, if they misapprehended the charge in this particular, they would be more likely to find appellant guilty of manslaughter.

Nor do we think the charge of the court is subject to appellant's criticism in the fifth paragraph, where "implied malice" is defined. This definition, when taken together, is in accordance with the authorities, and could not have been misunderstood.

Nor does it lie with appellant to complain of the court's sixth paragraph in this charge, wherein the court applied the law of implied malice to the facts of the case, and therein instructed the jury: "If appellant killed deceased in a sudden transport of passion, aroused with-

out 'adequate cause,' as that term is explained, and not in defense of himself, as will be hereafter explained, they will find defendant guilty of murder in the second degree." If appellant killed deceased, which is conceded, if it was culpable homicide, it was done in a sudden transport of passion; and the real issue was, was there adequate cause or not? He, of course, claimed it was done in self-defense. The jury found there was no adequate cause, and it does not occur to us appellant could complain that the jury were restricted in the charge on murder in the second degree to a killing in a sudden transport of passion. Certainly not, when this was in accord with the proof offered. Nor does it matter that in this charge the term "malice" is omitted. Murder in the second degree had already been defined, and malice aforethought stated as an essential ingredient thereof. Implied malice had been defined, and then this charge in paragraph 6 told the jury if the killing was unlawful, and under circumstances to constitute it a killing on implied malice, appellant would be guilty of that offense; that is, they were told that they could infer the malice, which is in accordance with the rule of law on the subject. This was not like the charge in Shriver's case, 7 Texas Criminal Appeals, 454; and the charge in Kemp's case, 13 Texas Criminal Appeals, 561, which is not as clear as that given in this case, was approved by the court.

There is nothing in appellant's eighth assignment of error, as the charge of the court in paragraph 14a did not unduly limit the character of the attack of deceased against which defendant was authorized to defend himself. The jury were distinctly authorized to judge of the character of the attack, and the manner and character of the defendant's knowledge, and the character and disposition of the deceased. This authorizes the jury to review all testimony bearing on the issue of disposition and character of deceased. This includes her habit of going armed with a pistol, and her disposition to use the same, as also the language used by deceased at the time of the homicide.

It is insisted that the failure of the court, in connection with the charge of self-defense, to predicate a charge on threats, was such error as should cause a reversal of this case. It is true the court failed to instruct the jury on the doctrine of threats in connection with the law given them on self-defense. However, the threat here proven by appellant was conditional in character; that is, deceased had told defendant on the day previous that she would kill him if he had her boys indicted. This was also alluded to in their conversation at the time of the homicide, according to the testimony of defendant. Appellant, however, told her that he had not had her boys indicted. But suppose deceased did not believe him, and concede that the threat was not conditional,— that is, if it was conditional that it was a condition which she had no right to make; in the view we take, the threat would not serve to intensify her conduct and acts at the time of the homicide. If appellant is to be believed,—and there was no testimony outside of his as to her

acts immediately connected with the homicide,—she not only drew the pistol on him, but advanced towards him, and attempted to shoot him. In such a contingency, threats would not intensify her conduct, but his right of self-defense was perfect on what she did at the time. The Barnes case, 39 Texas Criminal Reports, 189, referred to by appellant, does not support appellant. That was a case involving much the same question here presented. Previous threats had been introduced as evidence in the case. When the parties met, a quarrel ensued, and, according to the defendant's theory, the prosecutor shot at appellant. On this issue the court uses this language: "Now, there is no act of the prosecutor, under the appellant's theory, which can be viewed in the light of threats so as to give significance thereto. If appellant's theory be true, he did not need the threats to acquit him. The act of the prosecutor was such as to require no explanation. The prosecutor shot at him without any provocation whatever, and, if the jury did not believe this, there was no theory of the case presented by the evidence in which threats could have figured at all."

It is contended that the court should have given the special requested instruction predicated on the theory that, if appellant was justifiable in firing the first shot, and that same was fatal, but that the second shot was not a fatal shot, that in such case the firing of the second shot was immaterial in determining whether or not the defendant was guilty of murder, that, at most, appellant could only be convicted on the second shot of manslaughter. According to the view we take if this question, there was no issue predicated on this point. The evidence of appellant places these shots so close together as that if the one was justifiable the other must have been inevitably so, or if the first was not authorized the other was equally so. The witness Folsetter, so far as we have been able to discover, was the only witness, besides appellant, who heard the shots, and he states they were fired in rapid succession. Appellant testified on this point: "That immediately after denouncing him as a black son of a bitch, and that he was raising a lot of bitches, she raised up from her sitting posture, and jerked out a pistol, and threw it down on him, and just as she was in the act of doing that he jerked his pistol out of his pocket and shot her; and she then ran right up to him, and he caught her with his left hand, and wheeled her around, and shot her again as she went. That he did not know where any of the shots struck her. She threw her hands on the table, and then went to the door, and passed out of the house." He further testified: "That after the first shot was fired there was considerable excitement, and she came right at him with the pistol in her hand, and he could see her bulk there, and the second shot filled the room with smoke. As near as he could tell, she threw her hands out at the table, which was the customary place for the red-handled butcher knife, and he thought that she was grabbing at a knife. That he shot Mrs. Whitesides [deceased] because he was afraid she would kill him. That he

did not shoot her for what she had said about his family. That he did not shoot her any more, as quick as he saw the danger was over." Now, from this evidence, it seems to us, appellant was as fully authorized to fire the second shot as he was the first shot. That is the reasonable interpretation we place upon his testimony, and we do not think the jury could have done otherwise. It does not matter in this respect which of the shots was fatal. It may be that the first was the fatal shot, and the second shot was, according to the testimony of one of the physicians, not inevitably fatal. The cases cited by counsel on this proposition announce a correct rule of law, but we do not believe they apply to this case.

What we have said above disposes of appellant's special requested charge number 1, with reference to the right of a defendant to pursue his adversary until all reasonable appearances of danger have ceased. We do not believe the court was required to charge on an unlawful and violent attack upon appellant. If any attack was made on him by deceased, it was a deadly attack, or one which, at least, would cause him to apprehend serious bodily injury, and nothing else.

During the argument of the district attorney, he stated to the jury that he believed defendant was guilty of murder. It does not appear any exception was taken to this remark at the time, but subsequently counsel for appellant requested the court to instruct the jury not to consider said remark, which instruction the court refused to give, and this is assigned as error. In explaining the bill, the court says "that his attention was not called to any such statements at the time they were made, but was first called to his attention by counsel asking the foregoing charge." In Cooksie's case, 26 Texas Criminal Appeals, 72, referred to by counsel, the court held that certain remarks of counsel were evidently injurious to appellant, and were reversible error. The charge, excluding said remarks from the consideration of the jury, was asked and refused. It is not stated in the case whether any exception was taken at the time to the remarks. Young's case, 19 Texas Criminal Appeals, 536, and Kennedy's case, Id., 618, are also referred to by counsel. In the first named case, the learned judge who wrote the opinion in Cooksie's case uses this language in regard to the remarks of counsel: "Now, in relation to this matter, we would be inclined to reverse the judgment if counsel for appellant had called upon the court to repress counsel for the State, and this had been refused, and such conduct had been persisted in without reproof. It seems that, when the attention of the court was called to these remarks, Mr. Maxwell had closed his argument." In Kennedy's case, supra, counsel for State was invoking public opinion to come to his aid in the prosecution. The learned judge who tried the case, without suggestion from defendant's counsel, on his own motion, promptly stopped the attorney as soon as he attempted to invoke public opinion. The court uses this language, citing the Young case: "While it is true that authors treating upon

this subject say that counsel either for or against the prisoner should never express their opinion as to the guilt or innocence of the accused, yet we would hesitate at this day to reverse a judgment because of a violation of this rule." Now, it occurs to us that in fairness, while the objectionable remarks were being made, the attention of the court should have been called to the same, and an opportunity afforded to stop counsel, or, if necessary, reprimand him on account of such remarks, and, in addition to this, a charge should have been asked. As it was, it seems counsel was permitted to go on and announce his belief in defendant's guilt to the jury without objection. If the court's attention had been called to the matter at the time, no doubt the expression would have been withdrawn. However that may be, we are advised of no case where merely such expression of counsel's belief in appellant's guilt has been cause for reversing a case. (Of course, this is objectionable, and should not be permitted.) But the cases which have been reversed on account of remarks of counsel have been of a different character, and we do not feel authorized to hold in this case that the expression of the district attorney to the effect that he believed defendant guilty is reversible error.

We see no error in the fourteenth paragraph of the court's charge on self-defense. Taken as a whole, it expressed a proper rule of law. It is true, in the first part of the charge, the court told the jury that "the party would be justified in using all necessary force to protect himself," etc. The court should have instructed the jury that he is authorized to use such force as may reasonably appear to him necessary. The charge, however, complained of, further told the jury that appellant was authorized to act upon the reasonable appearance of danger as it appeared to him at the time, and that in no event was he bound to retreat or resort to any other means in order to avoid the necessity of killing his assailant. Moreover, in the succeeding paragraph, the jury was instructed: "If the attack on him by deceased was of such a character as to cause him to have a reasonable anticipation of danger or serious bodily injury, viewed from his standpoint, and he shot and killed deceased, then to acquit him; and that if deceased was armed at the time she was killed, and was making such attack on defendant, and if the weapon used by her, and the manner of its use, was such as likely to produce death or serious bodily injury, then the law presumed deceased intended to murder or inflict serious bodily injury upon defendant, and that it was immaterial whether the pistol was loaded or not loaded, or would shoot or not shoot, provided defendant did not know it was unloaded or would not shoot, which latter fact the State must show."

We do not think there was any error in permitting the witness Weldon to state the angle the ball took which made the hole found in the floor. This, it seems to us, was not a question for an expert, but merely a matter of observation. In addition to what has been said,

we would observe that this testimony was objected to on the ground that the witness Weldon was not an expert. This, as has been often said, is not a certificate of the judge that he was not shown to be an expert, but merely the assertion of appellant's ground of objection. The bill was not full upon this question.

Appellant complains, in conclusion, that the testimony is insufficient to support the verdict. We have read the record carefully, and we can not agree to this contention. The facts were before the jury. The court appears to have given a full and fair charge on all the issues presented by the evidence. While there is no positive testimony, aside from that of appellant himself, as to how the killing occurred, yet the circumstances proven were such as to antagonize appellant's defense, and to support the theory of the State to the effect that appellant shot and killed deceased of his malice aforethought, and the jury were warranted in finding him guilty of murder in the second degree. The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

#### March 13, 1901.

HENDERSON, JUDGE.—This case was affirmed at the Tyler term, 1900, and now comes before us on motion for rehearing. In the motion appellant presents for our consideration, and as a ground for reversing the case, the action of the court in refusing to permit his counsel to argue certain testimony which is embodied in bill of exceptions number 8. In this motion appellant explains that this matter was not relied on in his brief and argument heretofore filed, because the same was prepared, not from the transcript, but from the original papers in the case, and the bill number 8 was misplaced, which caused him to lose sight of this question. In the original opinion we followed the brief and argument of counsel for appellant, and did not notice the refusal of the court to hear argument as presented in said bill number 8. In order to discuss the action of the court, we will here set out the bill in full, as follows: "After defendant, A. A. Spangler, had testified for himself on direct examination, State's counsel, on cross-examination, asked him why he had turned over to Mrs. Whitesides the 'Triangle' cattle, to which he answered: 'I was holding Walter's money for him, and she [deceased] was after me for it, together with what I owed her, and had turned them cattle over on that indebtedness.' 'Q. Did you turn over all you had of that brand at that time? A. Yes, sir. Then, right on top of that, I was attached here. I had got in debt some five or six thousand dollars, and they went and attached about twenty thousand dollars worth of stuff here to pay off that indebtedness, and then attached all the cattle they could get their hands on, but there was some remnant stuff they did not get their paws on, and as I would get them up I would turn them in to her [deceased].' And after the witness Charley Spangler

had testified for the State, on cross-examination he was asked by defendant's counsel the following questions, viz: 'Q. I will ask you now if you ever heard her [Mrs. Whitesides] say anything about your mother or sisters. A. Yes, sir; she said they were "God damned whores." ' And be it further remembered that, on the argument of the case, State's counsel frequently asked why it was, if the deceased was such a bad woman, defendant had left his home and family, and was living on the Leonard place with the deceased; and, in answering such argument, defendant's counsel referred to the fact that he (defendant) had been broken up by attachments; and he proposed to argue the testimony of defendant, Spangler, drawn out on cross-examination by the State, with reference to such attachments, which testimony is above set out; to which proposed argument State's counsel objected, and insisted that no such evidence had been adduced on the trial, which objections were sustained by the court, and defendant's counsel were not permitted to refer to and argue such testimony; to which action of the court defendant then and there excepted. Thereafter, defendant's counsel, in discussing the character of the deceased, and her animosity towards defendant and his family, began making reference to the testimony of the witness Charley Spangler, which is above set out; whereupon State's counsel again objected to such argument, and insisted that no such evidence had been adduced upon the trial; and the court sustained the objection, and refused to permit such testimony to be referred to in the argument; to which action of the court the defendant then and there excepted, and now here tenders this his bill of exceptions to sail ruling, and asked the same be approved. The above and foregoing bill is allowed, with this qualification: At the time of the objection to defendant's counsel arguing the matter brought out on cross-examination of defendant, I was busy preparing my charge. I simply told counsel for defendant that I did not remember any of the matters contained in the foregoing bill having been introduced in evidence, and I don't remember it now, and I refused to allow said bill in so far as it states what defendant and his son Charley Spangler said, because I have no recollection of it, and I will not certify to that which I do not know to be correct. [Signed] A. H. Carrigan, Dist. Judge."

The learned judge who tried the case in the court below, in signing the bill of exceptions, starts out as if to explain the same, stating that the bill is allowed with this explanation; and he then goes on to state that he refuses to allow said bill in so far as it states what defendant and his son Charley Spangler said, because he had no recollection of it. If this is not an explanation contradicting the bill, it is at least equivocal. Formerly, it was held that a judge had no right to contradict a bill under the guise of an explanation; that an explanation was one thing, and a contradiction another. Tyson v. State, 14 Texas Crim. App., 390; art. 1368, Rev. Stats. However, in Jones v. State,

33 Texas Criminal Reports, 7, it seems that if the judge, under the guise of an explanation, contradicts a bill of exceptions, and the party accepts and files the same, it will be considered. If we are to regard the judge's certificate as a disallowance of the bill on the ground that he did not remember the testimony, then appellant insists that we should, in connection with this bill, also consider bill of exceptions number 2, which shows that the very testimony of the witness A. A. Spangler which the judge refused his counsel permission to argue was admitted over his objections. It occurs to us that it is but common fairness to consider these two bills together. As stated, bill of exceptions number 2 shows that the testimony of Spangler in reference to the cattle and the attachment proceeding was drawn out by the State on cross-examination of A. A. Spangler, over the objections of appellant. In bill number 8 the judge states he does not remember that such testimony had been adduced in the case. Evidently the judge was mistaken as to this. If he was mistaken as to this matter, then it is likely he was also mistaken as to the testimony of Charley Spangler, which he also refused to allow appellant's counsel to argue, because he did not remember it. If we recur to the statement of facts, we find that this testimony was adduced from the witness Charley Spangler. Appellant insisted he had a right to argue all of this, because it had been admitted as evidence in the case, and he claimed that the State had used certain evidence with regard to the defendant, A. A. Spangler, to his detriment, especially that portion of it which showed he had been living with deceased for some time prior to the homicide; and that he desired to use the testimony with regard to the attachment proceeding and the cattle as the reason for his residing with deceased, notwithstanding the character she was shown to have and notwithstanding quarrels between them. It may be that to some minds the deductions which appellant sought to draw from this testimony would be considered far-fetched, and the argument on this behalf would be lacking in effect. To others, in the condition of the evidence on this subject, the argument may have appeared a sound one, and a complete answer to the State's proposition. This is all a matter of speculation. The only question with which we have to deal is, was this matter in evidence? If so, appellant had a right to use it in argument for every legitimate purpose, and its logic or convincing character was a question solely for the jury. Beyond this, without doubt, the evidence of Charley Spangler was of an important character, and to deny argument upon it was unquestionably a grave infringement of the privilege of counsel. But, as stated before, it is not the importance of testimony which authorizes its use in argument; for we hold it is not within the power of any court or of any judge to prohibit counsel from arguing testimony which has been admitted in the case before the jury. Section 10 of our Bill of Rights guarantees to an accused person the right to be heard by himself or counsel, or both. In pursuance of this au-

thority of the Constitution, the right to· be heard by counsel is regarded by courts as a sacred right, and when denied will constitute cause for reversal. Tooke v. State, 23 Texas Crim. App., 10; Roe v. State, 25 Texas Crim. App., 66; Reeves v. State, 34 Texas Crim. Rep., 483; Cooley, Const. Lim., p. 412. In this case we can not measure the injury sustained. We can not tell what effect the argument upon this character of testimony would have had upon the jury. We only know that the court had decided this was legal testimony, and had admitted it in the case, and that appellant had a right to discuss it, and to use it for every legitimate purpose in his argument. This was denied by the court, and for this the judgment must be reversed.

Appellant also strenuously insists that the court should have given a charge on threats in connection with the charge on self-defense. In reviewing this question, we are inclined to the opinion that such a charge should have been given.

In addition, appellant also insists that we review other matters discussed in the original opinion. However, we see no reason to change the views therein expressed. But for the refusal of the court to permit the argument of counsel on the evidence adduced in the case, as shown in bill of exceptions number 8, the motion for rehearing is granted, and the judgment reversed, and the cause remanded.

*Motion granted. Reversed and remanded.*