## C. H. McCarty v. The State.

No. 2886. Decided January 27, 1904.

1.—Indictment—Theft by Bailee.

It is not necessary to allege the particular character of bailment in a prosecution under article 877, Penal Code, which makes the conversion by a bailee theft; but where the bailment arises through an agent and not the owner of the property, the agency should be alleged by direct and positive averment and not left to inference and the want of consent of the agent should be likewise averred.

**2.—Bill of Exception.**
See opinion for discussion of practice in lower courts for not clearly ruling on contested questions in bill of exceptions.

Appeal from the District Court of Parker.    Tried below before Hon. J. W. Patterson.

Appeal from a conviction of theft of two horses; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*Preston Martin,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of the theft of two horses, and his punishment assessed at confinement in the penitentiary for a term of four years; hence this appeal.    The conviction was under article 877, Penal Code, which makes the conversion by a bailee theft. Appellant made a motion to quash the indictment because the contract of bailment, that is, its particular character, was not set out in the indictment; and because the contract of bailment was not distinctly alleged, but only inferentially stated; and because there was no averment of want of consent on the part of the person hiring, to wit, Henry Walker.    In reference to the first proposition it has been held that it is not necessary to allege the particular character of bailment.    Elton v. State, 40 Texas Crim. Rep., 339; 50 S. W. Rep., 379.

In reference to the second objection urged by appellant, we note that he relies upon Smith v. State, 42 S. W. Rep., 302, and also Elton's case, supra.    An examination of Smith's case shows that it refers to Calkins v. State, 34 Texas Crim. Rep., 251.    In the latter case it was held that the indictment must show a contract of bailment, and must allege with whom the bailee contracted; that the general allegation that the property was held by virtue of a contract of bailment, by the accused, was not sufficient.    In Smith's case, supra, it was held that the contract and the parties thereto must be directly averred, and not be left to inference.    Elton's case recognizes the principle announced in Smith's cas, but differentiated the latter from the former.    In the Elton case, it was alleged that appellant had possession of the two certain horses, and the same were then and there the property of Arthur Cain, and the possession thereof had been theretofore acquired by the said Elton by virtue of a contract of hiring and borrowing made by said Elton with one D. W. May, who was thereunto duly authorized by the said Arthur Cain. Then the want of consent to the conversion by both said Cain and May was alleged.

The facts of this case are substantially the same as in the Elton case, but the allegations in the indictment are not as direct and positive.    In this case, it is alleged, "that appellant having possession of two horses, then and there the property of one John Gilbert, by virtue of his con-

tract of hiring with one Henry Walker, who was acting for the said John Gilbert, as the agent and employe of the said John Gilbert, did then and there unlawfully and without the consent of the said John Gilbert, the owner thereof, fraudulently convert," etc.   It will be seen that in the present indictment it is alleged that Henry Walker, from whom appellant procured possession, was acting for the said John Gilbert (the owner) as his agent and employe.   It is not distinctly charged, as in Elton's case, that said Walker was duly authorized by the said Gilbert, etc., but we get his authority from the allegation that he was acting as such agent.   We think the allegation should be direct and positive, and not be left to inferences.   Moreover, inasmuch as the contract of hiring in this case was made through an agent, which would seem to concur with the idea that such agent might act by the terms of the contract, or otherwise consent to the disposition of the property by the bailee; consequenly the want of consent of the agent should be alleged in the indictment, as was done in Elton's case.   True the statute (article 877, Penal Code) says that if the conversion is made without the consent of the owner, the offense is complete; still, inasmuch as the agent directly parts with the property, and his agency and its extent is involved in the case, in our opinion his want of consent should be alleged.   We think the indictment here comes within the rule laid down in Smith v. State, supra, and is not in its form like the indictment in Elton's case.   Therefore we hold the indictment defective, and it should have been quashed.

There is but one other question we deem necessary to notice; that is, the question raised by appellant as to the remarks of the prosecuting attorney concerning the failure of appellant to testify in the case.   It appears from the statement of appellant's attorney on this point that, during the opening speech for the State by John W. Meyers, assistant prosecuting attorney, he used the following language:   "I tell you, gentlemen of the jury, they have not tried to explain anything in this trial. Where is Joe Harrold, an accomplice with defendant here?   Why is he not placed on the stand to explain how it all happened?   He knows and the defendant knows; but they are afraid to go on the stand and explain this—I mean Joe Harrold is afraid to go on the stand and tell about it."   At this juncture, as shown by appellant's counsel, he excepted to said remarks.   The judge explains the bill as follows:   "This bill is signed with the following statement as a part of and in qualification of the same.   That while said counsel was addressing the jury, defendant's counsel, Preston Martin, Esq., came to me and called my attention to the fact that counsel for State had alluded to and commented to the jury upon defendant not testifying in the case, and I at the time made a note of what defendant's counsel claimed and defendant's counsel then and there objected and excepted to the remarks of counsel for the State.   I was busy at the time writing my charge to the jury, and did not hear what counsel was saying, and the counsel for State positively denied making any such remarks, and after hearing affidavits both by State and defendant I am not able to say whether the

remarks were made or not, and I do not know whether or not same were made, and this bill is signed with the foregoing statement and qualification as part of same."

From further proceedings as to this bill, it appears it was contested by the State, and affidavits pro and con introduced. Besides the affidavit of his counsel, appellant introduced the affidavit of the deputy district clerk; and they concur in stating that the argument was used as alleged by defendant. On the other hand, both the county attorney and assistant county attorney made affidavits directly controverting the alleged statement. In that connection the county attorney in his affidavit states that his assistant, Mr. Meyer, did allude to the fact that McCarty's accomplice, Joe Harrold, and McCarty's wife did not take the stand, and that he used the remark in that connection, why were they not here to testify to these things if true, etc. In connection with these affidavits, the State also introduced the affidavits of a number, perhaps a majority of the jury, who stated that they did not hear the remark attributed by appellant to prosecuting attorney. We understand there are but two ways to take a bill of exceptions to the action of the court during the progress of a criminal trial: one by bill presented by the defendant and allowed by the judge; and the other, in case of refusal, to take a bill signed up by bystanders. The affidavits here presented could not be considered in the nature of a bill by the bystanders, and unless the bill, as signed by the judge, is a bill of exceptions, then appellant has no bill on the subject of said remarks. We are advised of no case presenting the exact question as the bill of exceptions here shows. In Spangler's case, 42 Texas Crim. Rep., 233, on motion for rehearing a bill with a similar certificate was embraced in the record; that is, the judge certified he was busy at the time and did not remember any of the matters contained in the bill as having been introduced in evidence, and refused to allow the bill as to the argument on certain evidence because he had no recollection of it. In a subsequent bill, however, it was shown that the evidence recited in the first bill was introduced in evidence over appellant's objection, and we construed the two bills together. But here there is no second bill, and the judge certifies he did not hear what counsel was saying at the time, and the State's counsel positively denied making any such remarks as attributed to him, and that he then heard affidavits both by State and defendant, but was unable to say whether the remarks were made or not, and signed the bill with this qualification.

We believe it was the duty of the court when the exception was first made to him (he being busy about other matters had not heard what was said), to have stopped the case and made inquiry of counsel, and have then determined the matter, while it was fresh. Failing in this, he should at least, after having heard the affidavits, decided the question one way or the other, either granting or refusing the bill outright. As it is, we are unable to determine whether the judge intended to grant

45 Crim.—33.

appellant some sort of a bill of exceptions, or to refuse it altogether. Appellant was entitled to have his bill either approved by the judge or disallowed, as in the latter case he would then have the right to resort to bystanders. At any rate the trial judge was not authorized to refer a question of fact for decision by this court, when it was a part of his functions to decide that matter for himself. However, this question is not likely to arise on another trial, and is not necessary to a decision thereof, inasmuch as the indictment is defective. Because of such defect the judgment is reversed and the prosecution ordered dismissed.

*Reversed and dismissed.*