## DALLAS RANDALL V. THE STATE.

No. 19180.   Delivered November 17, 1937.
Rehearing denied January 26, 1938.
Appellant's application for leave to file second motion for rehearing denied February 23, 1938.

The opinion states the case.

*Minick & Barnes,* of Mineola, and *Thomas B. Ridgell,* of Dallas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—Appellant was convicted of the theft of an automobile, and his punishment was assessed at confinement in the State Penitentiary for a term of five years.

The record shows that on the night of July 6, 1934, a car belonging to Will Moody, while parked on the streets of Mineola, was taken by a man who was subsequently identified as the appellant. The following day appellant and another man were found at Gladewater occupying the stolen car. When the officers observed the car and undertook to arrest appellant and his companion, they noticed that there were two shotguns in the rear seat of the car; appellant made two attempts to get one of the guns. After he was indicted for the theft of the car, he gave bond, but failed to make his appearance at court when his case was called for trial. About two years later, he was rearrested at Sweetwater, Texas.

Appellant did not testify, but interposed a plea of alibi which he supported by the testimony of his sister and his niece.

Complaint is made in four separate bills of exception to the argument of the prosecuting attorney. The first bill recites that the district attorney, in his closing argument, said: "I can testify that I talked to the witness Williford, and he told me that he knew Dallas Randall."

The court qualified said bill, and in its qualification states that counsel for appellant who preceded the district attorney

in the closing argument, said: "I know that the witness had talked to the State's attorney in this case, and he knew exactly what the witness was going to say when he put him on the stand. I have never in my life put a witness on the stand without first talking to him and knowing what he was going to swear to."

In reply to said argument, the district attorney said: "If Barnes can testify in this case, I suppose I can. I saw Mr. Williford out in the hall and asked him if he knew the defendant, Dallas Randall. He replied that he did."

In view of the argument made by appellant's counsel, and the fact that the witness, Williford, had identified appellant as the man whom he saw drive away in the Moody car, we do not think that appellant was injured any more by the argument than by the testimony of the witness, Williford.

Bill of exception number two recites that the district attorney in his closing argument said to each of the jurors, Blalock, Bartlett, and Anders: "I remember the first time I met you, and remember your face, but do not remember the kind of clothes you had on."

The court qualified said bill, and its qualification states that counsel for appellant argued to the jury that the witness, Williford, was mistaken in his identity of appellant for the reason that he could not tell the jury how appellant was dressed on the occasion when the car was stolen. The district attorney in response to said argument said:

"Of course, Mr. Williford does not remember how the defendant was dressed on the occasion that he first saw him, but that does not mean he does not remember his face. I remember the first time I ever saw you, Mr. Blalock, Mr. Bartlett, and Mr. Anders, but I can not remember the kind of clothes you had on.

"Counsel for the defendant was able to confuse Williford over the terms of facial expressions and facial features, but the witness was positive that he remembered the face of that man. Anybody who has seen that mug once will never forget it."

While the argument of the district attorney in giving his personal opinion of appellant's facial appearance might not be proper, yet we do not deem it of such harmful character as to require a reversal of this case.

Bill number three recites that the district attorney said to the jury: "The reason that the defendant was not under the steering wheel of the car at the time of his arrest was because

he was a killer and a better shot than Ray, who was under the steering wheel."

This bill is qualified by the court to the effect that the officers who arrested appellant at Gladewater, testified that the driver stepped on the starter but it didn't start; he had not turned the key. Appellant turned around and reached for the guns in the rear of the car; he reached back twice, and they had to threaten to kill him if he placed his hands on any one of the guns. Counsel for appellant questioned the officers as to who was under the steering wheel, and who was driving or attempting to drive the car when they arrested them, and that the officers replied that Ray, appellant's companion, was driving. Counsel for appellant argued that the appellant, Dallas Randall, was not in control of the car, and that he did not touch the steering wheel, but that the other fellow was driving. The district attorney in reply thereto, said: "Perhaps the reason that Dallas Randall was not driving the car was because he may have been a killer and a better shot than Ray * * *."

It is our opinion that the bill as qualified fails to show reversible error. See Branch's Penal Code, Sec. 363.

Bill of exception number four recites that the district attorney, in his argument to the jury, said: "I ask the jury to give the defendant ten years in the penitentiary, because I know he is guilty. I do not usually ask the jury to give any definite sentence unless I know that the defendant is guilty. I know that Williford is telling the truth."

The court in its qualification of the bill states that counsel for appellant argued that without the testimony of Williford the State did not have a case, and jury would be compelled to acquit the defendant, and he knew that the jury knew that Williford could not positively identify the defendant, and that he was not telling the truth.

In reply thereto the district attorney merely said: "Williford is a citizen of the county, has no interest in the case, and has no reason to testify falsely." He then asked the jury to give the defendant ten years in the penitentiary. We do not believe that the bills of exception, as qualified, show any reversible error. See Rancier v. State, 63 S. W. (2d) 697; Clayton v. State, 298 S. W. 601; Hinton v. State, 144 S. W. 617; Ball v. State, 78 S. W. 508; Spangler v. State, 42 Texas Crim. Rep. 233.

Counsel for the State should always confine his argument to a discussion of the testimony, and not transgress the rules announced by this Court.

Finding no error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

GRAVES, Judge, absent.

ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—It was alleged in the indictment that the stolen car belonged to Will Moody, and was taken from his possession without his consent. Upon the trial it developed that on the night of the theft a son of Mr. Moody was driving the car and parked it in front of a store from which place it was stolen. It is urged now on motion for rehearing that a variance appears between the averments and proof in regard to ownership and possession. No such contention was made upon the trial, and appellant made no claim that the car was taken with the son's consent. The evidence shows that the son lived with his father, and the record is silent as to the son's age. So far as the record shows he may have been a minor. Even if the property be in the exclusive control and management of a minor it is our understanding of the law that ownership and possession may be alleged in either him or the parent. 41 Tex. Jur., page 135, Sec. 84; Jackson v. State, 47 Texas Crim. Rep. 85; Bazan v. State, 24 S. W. 100; Wright v. State, 35 Texas Crim. Rep. 470, 34 S. W. 273. However, there is nothing in the present record to indicate that the son was more than the mere custodian of the property. See 41 Tex. Jur., page 132, Sec. 82.

We have again examined the bills of exception, all of which complain of argument of the district attorney. None of them appeals to us as presenting error calling for a reversal. The statement in argument that the witness Williford had told him—the district attorney—that he knew appellant, might under some circumstances present a serious question, but in view of the record and the remarks of appellant's counsel we think no such question is presented here. In the examination of such witness in chief the State only proved by him that he saw appellant get in the Moody car and drive it away. On cross-examination appellant's counsel himself elicited from the witness that he could not possibly be mistaken in appellant's identity; that while witness had never seen appellant before the time of the theft, he picked him out from some fifteen other men in the jail, as the one he had seen take the car. Witness answered on cross-

examination that he had not talked to anyone about the case. In his argument counsel for appellant said:

" 'I know that the witness had talked to the State's attorneys in this case, and the State's attorneys knew exactly what he was going to say when they put him on the stand. I have never in my life put a witness on the stand without first talking to him and knowing what he was going to swear.' Counsel for the defendant was not sworn as a witness in the case. In reply to this argument, the district attorney used the following language: 'If Mr. Barnes can testify in this case, I suppose I can. I saw Mr. Williford out in the hall and asked him if he knew the defendant, Dallas Randall. He replied that he did. Further than that, I did not know what the witness Williford was going to testify and swear when he took the stand.' "

We take the foregoing quotation from the court's explanation to bill number one. It will be noted that no proof had been offered by appellant seeking to impeach Williford by showing that he had made statements indicating that he did not identify or know appellant; if such had been the situation the district attorney's statement would undoubtedly have presented a most serious question. But arising as it did, and in view of the entire record, we can not reach the conclusion that a reversal is demanded.

The motion for rehearing is overruled.

### ON APPELLANT'S APPLICATION FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—The application for leave to file a second motion for rehearing reiterates the contentions made and considered on the original hearing and rehearing. We are not led, from an examination of the application, to conclude that we erred in affirming the judgment of conviction and in overruling the appellant's motion for rehearing. We quote from Hickman v. State, 247 S. W. 518, as follows:

"Second motions for rehearing will not be considered by this Court, nor leave granted to file same, unless there be a sufficient showing in such application of the fact that in its original opinion, or opinion upon the motion for rehearing, the Court has omitted to consider some matter which, from the statement thereof in such application, is made to appear to this Court so vital to the proper disposition of the case as to lead us to conclude that we erred in failing to consider same, or else such application must present such facts, arguments, or cita-

tions in reference to some matter decided in the original opinion or that upon rehearing, as will lead this Court from an examination of the application to conclude that our decision in such regard was so far wrong as that its correction would entitle the appellant to a second rehearing."

Appellant's application for leave to file a second motion for rehearing is denied.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.