**John Wayne BILLY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–00–02016–CR.**

Court of Appeals of Texas, Dallas.

May 14, 2002.

---

Andrew L. Farkas, Andrew L. Farkas & Associates, Plano, for Appellant.

Tom O'Connell, Criminal Dist. Atty., McKinney, for State.

Before Justices MOSELEY, O'NEILL, and RICHTER.

## OPINION

Opinion By Justice O'NEILL.

Appellant John Wayne Billy appeals his conviction for indecency with a child. After finding appellant guilty, the jury assessed punishment at four years' confinement, probated for eight years. In two points of error, appellant contends the trial court erred in (1) denying his motion for instructed verdict and (2) denying his right to representation of counsel. For the following reasons, we affirm the trial court's judgment.

The grand jury indicted appellant for indecency with a child. Specifically, the indictment alleged appellant engaged in sexual contact with A.P. by touching a part of the child's genitals with his hand. At trial, A.P. testified that when she was ten years old, she and her mother spent the night at appellant's house in Celina, Texas. That night, she woke to find appellant had his hand in her panties. Appellant's hand was on her "private" and he was moving it around. A.P. said appellant was touching her for a couple of minutes. When appellant stopped, she fell back asleep. A.P. testified she thought appellant was awake during the incident because he was not snoring.

Appellant testified and denied committing the offense. He acknowledged A.P. slept in the same bed with him and her mother one night. However, A.P. did not sleep next to him, and he did not touch her. Furthermore, the following morning A.P. acted normally toward appellant.

After hearing the evidence, the jury found appellant guilty of indecency with a child. In his first point of error, appellant contends the trial court erred in denying his motion for instructed verdict. A challenge to the trial court's ruling on a motion for instructed verdict is a challenge to the legal sufficiency of the evidence. *McDuff v. State*, 939 S.W.2d 607, 613 (Tex.Crim. App.1997). In reviewing the legal sufficiency of the evidence, we review the evidence in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Turner v. State*, 805 S.W.2d 423, 427 (Tex.Crim.App.1991). The inquiry is whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Turner*, 805 S.W.2d at 427. The trial court, as trier of fact, is the sole judge of the credibility of the witnesses and the weight to be

given their testimony. *Adelman v. State,* 828 S.W.2d 418, 421 (Tex.Crim.App.1992). The trial court may choose to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986); *McCray v. State,* 861 S.W.2d 405, 407 (Tex.App.-Dallas 1993, no pet.).

■ A person commits indecency with a child if he engages in sexual contact with a child. Tex. Pen.Code Ann. § 21.11(a)(1) (Vernon 1994). Sexual contact means any touching of the anus, breast, or any part of the genitals of a child if committed with intent to arouse or gratify the sexual desire of any person. Tex. Pen.Code Ann. § 21.01(2) (Vernon 1994). The intent to arouse or gratify may be inferred from the defendant's conduct. *McKenzie v. State,* 617 S.W.2d 211, 216 (Tex.Crim.App.1981).

■ Appellant asserts the evidence is legally insufficient to show he had the requisite intent because any finding of intent would require the impermissible stacking of inferences. In particular, he asserts the jury would have to base the inference that he intended to arouse or gratify his sexual desire on two other inferences, (1) the inference he was awake, and (2) the inference he intended to touch the child. We disagree.

A.P. testified that appellant put his hand inside her panties, on her private part, and moved his hand around for a couple of minutes. The jury could infer directly from appellant's actions both that he intended the contact and that the contact was performed with the intent to arouse or gratify his sexual desire. *See Wallace v. State,* 52 S.W.3d 231, 234 (Tex.App.-El Paso 2001, no pet.). Because appellant's intent could be inferred directly from his actions, no impermissible stacking is required. We resolve the first issue against appellant.

■ In the second issue, appellant asserts the trial court committed multiple errors that had the effect of depriving him of the effective assistance of counsel. In particular, appellant asserts the trial court erred in (1) improperly defining reasonable doubt during voir dire, (2) refusing to allow his counsel to define reasonable doubt during voir dire, and (3) refusing to allow his counsel to make proper jury argument. We begin by noting appellant did not object to the trial court's definition of reasonable doubt at voir dire. Therefore, he has not preserved this complaint for review. Tex.R.App. P. 33.1(a)(1); *see also Sharpe v. State,* 648 S.W.2d 705, 706 (Tex.Crim.App. 1983). Moreover, appellant has not provided any substantive legal argument or authority showing that the trial court's statement at voir dire requires reversal. Rule 38.1(h) of the rules of appellate procedure requires an appellant to include in his brief a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. Tex.R.App. P. 38.1(h); *Lagrone v. State,* 942 S.W.2d 602, 614 (Tex.Crim.App.1997). We conclude this complaint is inadequately briefed and presents nothing for review. Similarly, appellant also purports to complain about remarks he was prohibited from making during voir dire. Again, appellant has not provided any substantive legal argument or authority to support his contention. Therefore, appellant has not properly presented a claim he was denied proper voir dire. *See id.*

■ The only argument or authority appellant cites in this issue concerns proper jury argument. Thus, the only issue presented is whether the trial court erred in sustaining the State's objection to appellant's closing argument. In closing, appellant argued:

> [R]easonable doubt has been described as being hesitancy. Hesitancy,

what does that mean? When you have something of major importance in your life and you have to make a decision about it like you're about to do in the life of [appellant].

Let's say you have a child. Your child has a serious illness. Your child needs an operation. Your child may live or die without it or may live or die with it. You listen to the doctors. You weigh everything. You talk about it. You have to make a decision to have the operation or not. If you hesitate, that's a reasonable doubt as to whether you ought to have the operation.

The State objected to appellant's argument asserting appellant (1) misstated the law and (2) was not permitted to define reasonable doubt to the jury. The trial court sustained the State's objection. Appellant asserts the trial court erred in sustaining the objection because his attempt to define reasonable doubt to the jury was proper. The issue in this case is not whether a defendant is generally permitted to argue a definition of reasonable doubt to the jury, but rather whether the specific argument in this case was proper.

Here, the trial court refused to allow appellant to explain the meaning of "reasonable doubt" with the "hesitation" definition. This definition was approved by the court of criminal appeals in *Geesa v. State,* 820 S.W.2d 154, 162 (Tex.Crim.App.1991). However, in *Paulson v. State,* the court of criminal appeals overruled *Geesa* concluding reasonable doubt need not be defined in the trial court's charge. *Paulson v. State,* 28 S.W.3d 570, 571–72 (Tex.Crim.App.2000). In doing so, the court did not merely conclude such a definition was unnecessary, it specifically disavowed the *Geesa* instruction. Specifically, the court stated:

. If a conscientious juror reads the *Geesa* charge and follows it literally, he or she will never convict anyone. Considerations utterly foreign to reasonable doubt might make a person hesitate to act. The gravity of the decision and the severity of its consequences should make one pause and hesitate before doing even what is clearly and undoubtedly the right thing to do. Judgments that brand men and women as criminals, and take their money, their liberty, or their lives are deadly serious. They are decisions that make us hesitate if we have any human feelings or sensitivity at all. So to convict, a juror must either ignore the definition, refuse to follow it, or stretch it to say something it does not say.

*Id.* at 572. Thus, while *Paulson* was not a jury argument case, the court of criminal appeals clearly expressed its opinion that the hesitation definition of reasonable doubt placed too great a burden upon the State. Its conclusion is particularly apt with respect to the hypothetical appellant attempted to use in this case. Specifically, far less than reasonable doubt should cause a parent to "hesitate" before deciding whether to allow their child to have a life threatening operation. Because the definition appellant attempted to argue was not proper, the trial court did not err in sustaining the State's objection.

■ The dissent would conclude the trial court erred in sustaining the State's objection to appellant's argument. The dissent, however, makes no attempt to explain how the specific argument in this case was a proper construction of the reasonable doubt standard of proof. Instead, the dissent bases its conclusion that the trial court erred on the general proposition that parties in a criminal prosecution should be permitted to argue the meaning of reasonable doubt to the jury. According to the dissent, proposing a *definition* of reasonable doubt, irrespective of the

specific definition proposed, is both a proper plea for "law enforcement" and a reasonable deduction from the evidence. Apparently, the only limit the dissent would put on the parties' ability to argue a definition of reasonable doubt is that the parties not urge the jury to disregard the charge.[1] However, we fail to see how this places any limits on the parties' ability to define reasonable doubt as the charge leaves that phrase undefined. Thus, the dissent essentially would hold the parties may propose any definition of reasonable doubt they see fit.[2] This is not the law. *See Loar v. State*, 627 S.W.2d 399, 401 (Tex. Crim.App.1981). Specifically, parties are not permitted to make statements about the State's burden that are inaccurate or misleading. *Arnold v. State*, 68 S.W.3d 93, 102 (Tex.App.-Dallas 2001, pet. ref'd); *Melendez v. State*, 4 S.W.3d 437, 442 (Tex. App.-Houston [1st Dist.] 1999, no pet), *overruled on other grounds by Small v. State*, 23 S.W.3d 549 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd). Because the *Paulson* court concluded the *Geesa* definition was "redundant, confusing, and logi-

cally-flawed" and would not allow a jury to convict if followed literally, appellant's argument based on that definition necessarily constituted an inaccurate and misleading statement about the State's burden.[3] Therefore, we cannot conclude the trial court erred in sustaining the State's objection to the argument. We overrule appellant's second point of error.

We affirm the trial court's judgment.

Dissenting Opinion By Justice MOSELEY.

MOSELEY, Justice, dissenting.

I fully agree with the majority that the evidence was legally sufficient to support appellant John Wayne Billy's conviction. However, I believe the trial judge erred, in derogation of Billy's Sixth Amendment rights, when he prevented Billy's counsel from addressing the jury during closing argument concerning the meaning of "proof beyond a reasonable doubt." Thus, I respectfully dissent.

---

1. The dissent would also prohibit the parties from arguing the definition was the "legal" definition, binding on the jury. This does not in any way limit the parties' ability to propose definitions, just the manner in which they may propose them. Further, to the extent argument regarding the meaning of the reasonable doubt standard of proof does not attempt to provide the "legal" meaning of the State's burden of proof, we fail to see how it falls within any permissible category of jury argument.

2. The Fourth and Seventh Circuits have both held the trial court is permitted to prohibit counsel from defining reasonable doubt in closing argument. *See United States v. Patterson*, 150 F.3d 382, 389 (4th Cir.1998); *United States v. Glass*, 846 F.2d 386, 387 (7th Cir. 1988); *see also* Note, *Reasonable Doubt: An Argument Against Definition*, 108 Harv. L.Rev. 1955, 1972 n. 115 (same policy rationale that supports leaving reasonable doubt undefined also supports denying counsel the opportunity

to define reasonable doubt during closing argument); *but see United States v. Hall*, 77 F.3d 398, 401 (11th Cir.1996) (trial court erred in refusing to allow defendant from arguing "accepted" definition of reasonable doubt in closing). Because the trial court did not prohibit appellant from defining reasonable doubt to the jury in this case, we express no opinion as to whether we agree with these courts.

3. The dissent suggests our conclusion somehow conflicts with *Paulson* because the *Paulson* court noted inclusion of the *Geesa* definition in the charge would not constitute *reversible* error if the trial court "acquiesces" to giving the instruction *provided* both the State and defendant agree. Obviously, a defendant cannot specifically agree to an instruction that benefits him and then obtain a reversal based on that instruction. We fail to see the relevance of that portion of *Paulson* to the issue before us.

BACKGROUND

This case was tried two weeks after the Texas Court of Criminal Appeals handed down its decision in *Paulson v. State,* 28 S.W.3d 570 (Tex.Crim.App.2000). *Paulson* overruled that portion of *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991), that *required trial courts to instruct* juries as to the meaning of "beyond a reasonable doubt." *Id.* at 571–73.[1]

Here, the trial court instructed the jury that the State was required to prove the defendant guilty by proving each and every element of the offense beyond a reasonable doubt. The charge emphasized the prosecution did not have the burden of proving guilt beyond all possible doubt. Per *Paulson,* the charge contained no a definition of "beyond a reasonable doubt."

The prosecutor's initial closing argument did not address or mention the concept of reasonable doubt or the State's burden of proof. However, during closing argument Billy's counsel attempted to propose to the jury a working definition of "beyond a reasonable doubt":

> Mr. Farkas [Defense Counsel]: Now, what is proof beyond a reasonable doubt? Well, there's no definition in this state of proof beyond a reasonable doubt. Other jurisdictions have defined it. I'm not going to get into what other jurisdictions have defined it as—I'm going to tell you, though, that reasonable doubt has been described as being hesitancy. Hesitancy, what does that mean? When you have something of major importance in your life and you have to make a decision about it like you're about to do in the life of John Billy.

> Let's say you have a child. Your child has a serious illness. Your child needs an operation. Your child may live or die without it or may live or die with it. You listen to the doctors. You weigh everything. You talk about it. You have to make a decision to have the operation or not. If you hesitate, that's a reasonable doubt as to whether you ought to have the operation.

> Ms. Voirin [Prosecutor]: I object to counsel misstating the law and defining reasonable doubt in his own terms.

> The Court: The Court sustains the objection to the last argument; and the law is as contained in the charge and that's what the jury will use in reaching their verdict.

> Mr. Farkas: There is no definition of reasonable doubt. I'm simply trying to tell you what I think reasonable doubt is.

> Ms. Voirin: Your Honor, I object to what counsel's opinion of what the law is. It's not relevant as contained in the charge.

> The Court: Sustained.

At the conclusion of jury argument, the jury deliberated, convicted Billy of indecency with a child, and assessed punishment at four years confinement, probated for eight years.

ANALYSIS

█ In his second point of error, Billy argues he was denied his right to counsel because the trial court sustained the prosecutor's objections to his counsel's closing

---

1. *Paulson* discussed some of the perceived shortcomings of the *Geesa*-mandated definitions and concluded the "better practice" would be for the court not to define the phrase. *Id.* at 572–73. However, it did not prohibit including in the charge any of those previously mandated definitions, including the "hesitancy" definition at issue here. In fact, the majority in *Paulson* specifically stated: "[I]f both the State and the defense were to agree to give the *Geesa* instruction to the jury, it would not constitute reversible error for the trial court to acquiesce to their agreement." *Id.* at 573.

argument concerning the meaning of "beyond a reasonable doubt." The State's brief recognized that denying a defendant an opportunity to make a proper jury argument implicates the defendant's constitutional right to counsel under the Sixth Amendment. *See Johnson v. State,* 698 S.W.2d 154, 166 (Tex.Crim.App.1985) (citing *Riles v. State,* 595 S.W.2d 858, 861 (Tex.Crim.App.1980), and *Spangler v. State,* 42 Tex.Crim. 233, 61 S.W. 314 (App. 1900)). However, the disallowed jury argument must be one the defendant is entitled to make. *McGee v. State,* 774 S.W.2d 229, 238 (Tex.Crim.App.1989). The State argues that Billy's argument was not one he was entitled to make, and the majority overrules Billy's second point of error on that basis. It is at this juncture that I diverge from the majority and from the State's argument.

Numerous cases recite that permissible jury argument in a Texas criminal case falls within four areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to the arguments of opposing counsel; or (4) pleas for law enforcement. *Wilson v. State,* 938 S.W.2d 57, 59 (Tex.Crim.App.1996). A jury argument as to how the jury should construe the phrase "beyond a reasonable doubt" set forth in the charge falls into at least two of these four areas.[2]

First, such an argument—made by either the prosecution or the defense—is necessarily a plea for law enforcement. The jury in a criminal case has taken an oath to render a true verdict according to the law and the evidence. TEX.CODE CRIM. PROC. ANN. art. 35.22 (Vernon 1981). The law requires the jury in a criminal case to convict a defendant only upon proof beyond a reasonable doubt. TEX. PEN.CODE ANN. § 2.01 (Vernon 1994). Urging compliance with the oath taken by jurors to render a true verdict according to the law, including finding proof beyond a reasonable doubt, is in essence a plea for law enforcement. *See Johnson,* 698 S.W.2d at 166 (State's arguments that jury had to answer issue in favor of State "if you're true to yourself and true to your oath" and that "if you follow your oath as jurors, if you listen to the evidence, use your common sense, and if you follow the law, there isn't but one decision you can make ..." are arguments regarding proper deductions from the evidence and pleas for law enforcement).

Second, as also discussed in *Johnson,* arguing how the jury should apply the "beyond a reasonable doubt" burden to the evidence adduced at trial is an argument as to the reasonable deductions to be made from the evidence. *Id.* Having been charged as to the burden of proof, the jury is charged to consider the evidence and—on the basis of that evidence—render a verdict as to whether the State met its burden. The answer to this question is in fact the ultimate deduction from the evidence that the jury must make.

In making that deduction, the definition of reasonable doubt may permissibly vary from jury to jury, and in fact from juror to juror. As Judge Ervin of the Fourth Circuit aptly stated:

> In the end, only a jury can truly define reasonable doubt. Reasonable doubt cannot be divorced from its specific context any more than the concepts of "reason" or a "reasonable person." Jurors differ in their own individual conceptions of reasonable doubt. During jury delib-

---

2. In an appropriate case, discussion of the definition of "reasonable doubt" could fall into the third category of permissible jury argument enunciated by case law. However, it does not in this case because the prosecutor's initial summation to the jury avoided any discussion of "reasonable doubt."

erations, these jurors debate whether or not the prosecution in the specific case before them has proven the guilt of a particular defendant beyond a reasonable doubt. Through "the community participation and shared responsibility that results from that group's determination of guilt or innocence," *Williams v. Florida,* 399 U.S. 78, 100, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the jury itself defines reasonable doubt and applies its own definition to the specific case before it.

*United States v. Walton,* 207 F.3d 694, 699 (4th Cir.), *cert. denied,* 531 U.S. 865, 121 S.Ct. 158, 148 L.Ed.2d 106 (2000). Thus, absent a single, mandated definition, the jury must decide what "beyond a reasonable doubt" means and deduce from the evidence whether the State has met that definition. In arguing whether such a deduction from the evidence is reasonable, both the prosecution and the defense should be permitted to argue differing definitions or illustrations of that term.[3] By sustaining the State's objections, the trial court effectively prevented Billy's counsel from arguing and illustrating one such definition.

### PAULSON V. STATE

The State cites *Paulson* in support of its contention that "[a]ppellant was not entitled to provide a reasonable doubt definition during his closing argument." Indeed, the State contends Billy "could not provide [any] actual definition" of reasonable doubt. The majority opinion agrees, at least with respect to the "hesitancy" definition. It cites *Paulson* for the conclusion that the "hesitancy" definition of reasonable doubt constituted improper ar-

gument, justifying the trial court in sustaining the State's objection and prohibiting Billy's counsel from arguing it.

As mentioned above, *Paulson* overruled that portion of *Geesa* that required *trial courts to instruct* juries as to the meaning of "beyond a reasonable doubt." *Paulson,* 28 S.W.3d at 571–73. However, *Paulson* is not a jury argument case. It does not discuss or address jury arguments at all and is no basis for excluding the argument of counsel as to the meaning of "beyond a reasonable doubt." Instead, *Paulson* merely stands for the proposition that the trial court is getting out of the business of defining "beyond a reasonable doubt." As shown by the above analysis, the position taken in *Paulson* is a recognition that the jury should be permitted to define reasonable doubt in light of the evidence before it and apply that definition to the case before it. Indeed, in setting forth the logical basis for its holding, *Paulson* observed that, prior to *Geesa,* the court "neither required nor encouraged any reasonable doubt instruction at all;" that "the language of the statute on reasonable doubt needs no amplification or attempt on the part of the trial court to explain the term;" and that "the jury is as competent to determine [the meaning of reasonable doubt] as the court." *Paulson,* 28 S.W.3d at 571 (citations omitted).

Allowing the State and the defense to argue various definitions and applications of reasonable doubt to the jury is not contrary to *Paulson* and, in fact, logically follows from the principle animating *Paulson:* that the trial court should not present the jury with a single, mandated definition. Instead, it should allow the jury, through "the community participation and shared

---

**3.** I am aware of the Fourth and Seventh Circuits' precedent holding the trial court may properly prevent counsel from defining reasonable doubt. However, the analyses from those circuits do not take into account the four permissible areas of jury argument recognized in Texas jurisprudence.

responsibility that results from that group's determination of guilt or innocence," to define reasonable doubt itself and apply its own definition to the specific case before it. *See Walton*, 207 F.3d at 699. However, by holding the trial court properly prohibited closing arguments as to the definition and application of that term, the majority opinion in essence redefines the phrase negatively—*i.e.*, by deciding what reasonable doubt does *not* mean. This places the trial court back in the exact position from which *Paulson* sought to extricate it—having to define reasonable doubt.

*Paulson* did express dislike for some of the definitions of reasonable doubt that had been mandated by *Geesa*, including the "hesitancy" argument Billy's counsel sought to make here (*e.g.*, reasonable doubt is doubt that would cause one to hesitate with respect to making major decisions in one's own life). The *Paulson* majority observed that a conscientious juror who literally followed the "hesitancy" definition would never convict anyone. *See Paulson*, 28 S.W.3d at 572. If this observation is logically correct, the proper antidote for a defense argument illustrating reasonable doubt via the "hesitancy" illustration is the State's argument as to the fallacious results that would flow from using such a definition.

Although the parties should not be prohibited from arguing the definition of "beyond a reasonable doubt" to the jury, such permission is not without limitation. The jury is required to find all elements of an offense beyond a reasonable doubt, and the parties do not have the freedom to distort the burden of proof. The parties may not urge the jury to contravene the court's charge or incorrectly suggest a particular definition of "reasonable doubt" is the law. The prosecutor in *Loar* made this error, and the trial court properly sustained the resulting objection. *Loar v. State*, 627 S.W.2d 399, 401 (Tex.Crim.App. 1981). However, "reasonable doubt" is an amorphous term, and the parties should have the opportunity to argue to the jury varying constructions of the phrase. One commentator noted:

> Both the prosecution and the defense have traditional formulas explaining the burden of proof that make it appear slightly lower or higher. Discussion of this kind is and ought to be permissible, because it serves the function of educating the jury in the law and the meaning of the burden of proof.

David Crump, *The Function and Limits of Prosecution Jury Argument*, 28 Sw. L.J. 505, 509 (1974) (footnotes omitted).

In the present case, defense counsel was not arguing his proffered definition of "reasonable doubt" was the law or was binding on the jurors. His argument only sought to offer a working definition of reasonable doubt that some jurors might determine appropriate. The State may offer its own definition of reasonable doubt during rebuttal. Each individual juror is then free to apply either of these definitions, or any other definition of "beyond a reasonable doubt" the particular juror chooses, when rendering his or her verdict.

### HARM

Under these circumstances, the trial court erred by sustaining the prosecutor's objection to counsel's closing arguments. The trial court's ruling prevented defense counsel from making an argument he was entitled to make. A constitutional error under Texas Rule of Appellate Procedure 44.2(a) directly offends the United States Constitution or the Texas Constitution, regardless of any statute or rule that might also apply. *Alford v. State*, 22 S.W.3d 669, 673 (Tex.App.-Fort Worth 2000, pet. ref'd). The Constitution guarantees an accused's

right to be heard by counsel, including the right to jury argument. *Christoph v. State*, 166 Tex.Crim. 453, 454, 314 S.W.2d 840, 840 (1958); *Johnson*, 698 S.W.2d at 166. Therefore, harm in this case should be analyzed using the standard found in Texas Rule of Appellate Procedure 44.2(a). The Court must reverse unless we determine beyond a reasonable doubt that the error did not contribute to the conviction. TEX.R.APP. P. 44.2(a). The evidence presented was not overwhelming. The complaining witness testified Billy touched her private part with his hand while she, her mother, and Billy all slept in the same bed. Billy testified he did not. This evidence is perfectly sufficient, both legally and factually, to support the jury's finding of guilt. However, allowing Billy's counsel to argue the meaning of reasonable doubt may well have changed the outcome of the trial. Because I cannot determine beyond a reasonable doubt that the trial court's error did not contribute to Billy's conviction, I would find harm, reverse the judgment, and remand the case for new trial. Because the majority does not do so, I respectfully dissent.