In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-01-00423-CR

____________


ALAN ENRIQUE CULTON, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 263rd District Court 

Harris County, Texas

Trial Court Cause No. 847836





O P I N I O N


 A jury found appellant, Alan Enrique Culton, guilty of sexual assault of a child. 
Having found true an enhancement paragraph alleging appellant's prior conviction
for aggravated sexual assault, the jury assessed punishment automatically at life in
prison. We address (1) whether appellant's automatic life sentence upon conviction
for his second sex offense constitutes cruel and unusual punishment and (2) whether
the trial court erred in sustaining the State's objection to defense counsel's definition
of "reasonable doubt" during argument. We affirm.

Facts 


 In early August 1999, appellant met M.W., a 16-year-old female, at a bus stop. 
Appellant was 34 years old. M.W. told appellant she was 16 years old, and they
exchanged phone numbers. The two began dating soon thereafter. They also began
engaging in consensual sexual intercourse. M.W.'s mother was unaware of the
relationship. 

 In January 2000, M.W. became pregnant. M.W.'s mother discovered M.W.'s
pregnancy in April 2000 and contacted the police. Charges were filed against
appellant on June 19, 2000. The child was born on September 9, 2000 and was
named after appellant. DNA results showed a 99.99999994% certainty of appellant's
paternity. Appellant was found guilty of sexual assault of a child.

 During the punishment phase, appellant entered a plea of "not true" to an
enhancement paragraph alleging one prior aggravated-sexual-assault conviction. The
State introduced evidence of appellant's prior felony conviction for the alleged
aggravated sexual assault, as well as for aggravated kidnapping (committed on the
same date as the aggravated sexual assault) and sexual assault stemming from a
separate incident in 1986. Appellant had pled guilty in 1987 to the three charges and
had been sentenced to 20 years on each case. The State also introduced evidence of
unadjudicated extraneous offenses appellant had committed in late 1999 and early
2000. In separate incidents, appellant had sexually assaulted an adult female and
committed aggravated sexual assault against her nine-year-old daughter. The jury
found the enhancement paragraph "true" and assessed punishment at life in prison.

 Proportionality of Mandatory Life Sentence


 In his first point of error, appellant contends that his mandatory life sentence,
pursuant to section 12.42(c) of the Texas Penal Code, is disproportionate to his crime
and violates the Eighth Amendment of the U.S. Constitution. (1) See U.S. Const.
amend. VIII; Tex. Pen. Code Ann. § 12.42(c)(2) (Vernon Supp. 2002).

 Appellant argues that his sentence is disproportionate to his crime, particularly
because he will not be eligible for parole until he serves 35 years. Appellant
compares his sentence to that of a convicted murderer who, even as an habitual
criminal with two prior felony convictions, faces only 25 years to life, with parole
eligibility coming after half the calendar time served or 30 years, whichever is less.

 The Fort Worth Court of Appeals thoughtfully considered this issue just last
year in Moore v. State, 54 S.W.3d 529 (Tex. App.--Fort Worth 2001, pet. ref'd). We
agree with that court's approach. We first make a threshold comparison of the
offense against the severity of the sentence, judging the gravity of the offense in light
of the harm caused or threatened to the victim or society and the culpability of the
offender. Id. at 542. Only on determining that the sentence is grossly
disproportionate to the offense do we need to consider the other two factors from
Solem v. Helm, namely, sentences imposed on other criminals in the same jurisdiction
and sentences imposed for commission of the same crime in other jurisdictions. 463
U.S. 277, 292, 103 S. Ct. 3001, 3011 (1983). 

 We also consider the mandatory life sentence imposed as reflecting the
seriousness of appellant's most recent offense, not standing alone, but in light of his
prior offenses. Moore, 54 S.W.3d at 543 (citing McGruder v. Puckett, 954 F.2d 313,
316 (5th Cir. 1992)). We interpret prior offenses to include both adjudicated and
unadjudicated offenses because, in Texas, both types of offenses may be introduced
into evidence for consideration at the punishment stage of trial. See Tex. Code Crim.
Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2002).

 Sexual assault of a child is a second-degree felony in Texas, with a punishment
range of from two to 20 years and a fine of up to $10,000. See Tex. Pen. Code Ann.
§§ 12.33, 22.011(a)(2)(A), (f) (Vernon 1994 & Supp. 2002). Appellant was 34 years
old when he engaged in a consensual sexual relationship with the 16-year-old
complainant. Consensual statutory sexual assault is not the most aggravated manner
of committing sexual assault. It is possible to commit sexual assault in a more violent
manner by forcing or threatening the victim, but even then, the maximum
confinement is 20 years. Thus, were we considering the primary offense alone, the
sentence would appear to be grossly disproportionate to the crime.

 In 1987, however, appellant pled guilty to the offenses of aggravated
kidnapping, aggravated sexual assault, and sexual assault. Although the record does
not reflect the underlying facts of those offenses, two are first-degree felonies, and
one is a second-degree felony. The record does reflect the underlying facts of the
unadjudicated offenses of sexual assault and aggravated sexual assault, however. The
first is a second-degree felony, and the second is a first-degree felony. All of
appellant's crimes were committed against persons. Although it is possible to commit
aggravated kidnapping without violence or threat of violence, see Tex. Pen. Code
Ann. § 20.04(a) (Vernon 1994), aggravated sexual assault and sexual assault must
have involved either an underage or elderly victim, lack of consent, or force. See
Tex. Pen. Code Ann. §§ 22.011(a), (b), 22.021(a)-(c) (Vernon 1994). As for the
unadjudicated offenses, the aggravated sexual assault was against an underage, nine-year-old victim, and the sexual assault involved violence against an adult female. 

 Considering appellant's primary offense in the context of his very serious prior
criminal history, we cannot say that an automatic life sentence is so cruel and unusual
as to constitute a violation of the Eighth Amendment. See McGruder, 954 F.2d at
316-17 (holding life sentence without hope of parole was not cruel and unusual for
crime of auto burglary when defendant had prior convictions for armed robbery,
burglary, escape, and armed robbery); see also Moore, 54 S.W.3d at 542-43 (holding
automatic life sentence was not cruel and unusual for crime of burglary of habitation
with intent to commit indecency with child when defendant had prior conviction for
indecency with child). Compare Solem, 463 U.S. at 279-80, 302-03, 103 S. Ct. at
3004-05, 3016-17 (holding life sentence with no possibility of parole cruel and
unusual punishment for passing a $100 no-account check when the predicate offenses
were six non-violent felonies, none committed against a person, and all involving
alcohol as a contributing factor); Rummel v. Estelle, 445 U.S. 263, 265-66, 100 S. Ct.
1133, 1135 (1980) (holding life sentence for obtaining $120.75 by false pretenses
cruel and unusual punishment when the predicate offenses were passing a no-account
check and passing a forged check). 

 After comparing the facts and circumstances of this case with those in the cases
above, we conclude that appellant's situation is much more like the defendants'
situations in Moore and McGruder than the defendants' situations in Solem and
Rummel. We hold that appellant's automatic life sentence was not so grossly
disproportionate to his crime as to constitute cruel and unusual punishment.

 Accordingly, we overrule appellant's first point of error.

Closing Argument Objection


 In his second point of error, appellant contends that the trial court erred in
sustaining the State's objection to defense counsel's definition of "reasonable doubt"
during closing argument. Appellant acknowledges that his guilt was a foregone
conclusion, but he claims that this circumstance magnified the harm appellant
suffered from the State's improper objection.

 This Court addressed the applicable standard of review in Grant v. State, 738
S.W.2d 309 (Tex. App.--Houston [1st Dist.] 1987, pet. ref'd), as follows:

It is well recognized that the State and the accused are entitled to give
reasonable explanations of the law. However, no party may make a
statement of what purports to be the law, when the same is not contained
in the court's charge. Any argument that contains a statement of the law
contrary to the court's charge is erroneous and is an improper argument. 
Error in the argument does not lie in going beyond the charge, but lies
in stating the law contrary to the same.


Id. at 311 (citations omitted).

 During argument, defense counsel began explaining reasonable doubt as "a
doubt based on reason and common sense, after a careful and impartial consideration
. . . ." The State objected that "[t]his is the very same definition that the Court of
Criminal Appeals has said is not to be used." The trial court sustained the State's
objection. Defense counsel then continued his argument by stating, "Then, you have
to use your own imagination as to what you consider a reasonable doubt. Consider
any doubt; then ask yourself: Is it reasonable that I have that doubt?"

 Defense counsel's explanation of reasonable doubt comes from language in the
jury charge formerly mandated by Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App.
1991), overruled in part on same grounds by Paulson v. State, 28 S.W.3d 570 (Tex.
Crim. App. 2000):

 A "reasonable doubt" is a doubt based on reason and common sense
after a careful and impartial consideration of all the evidence in the
case. It is the kind of doubt that would make a reasonable person
hesitate to act in the most important of his own affairs. 


 Proof beyond a reasonable doubt, therefore, must be proof of such a
convincing character that you would be willing to rely and act upon it
without hesitation in the most important of your own affairs. 

Geesa, 820 S.W.2d at 162 (emphasis added).

 Nine years later, the Court of Criminal Appeals overruled Geesa's holding
requiring trial courts to give a reasonable-doubt definition. See Paulson v. State, 28
S.W.3d 570, 573 (Tex. Crim. App. 2000). In doing so, the Paulson court broke down
the Geesa definition quoted above into its three constituent sentences. See id. at 572. 
According to the Paulson court, the first sentence of the Geesa definition (italicized
above)--which is the same definition appellant's counsel sought to use in closing
argument--was "useless" because "[i]t is like saying 'A white horse is a horse that
is white.'" Id. In contrast, the Paulson court concluded that the second and third
sentences of the Geesa definition (without italics above) were "troubling" and even
partially "fallacious":

 The second definition and what purports to be the third definition are
more troubling because the use of "hesitation" is ambiguous.


 In addition, the third "definition" is not really a definition at all. Instead,
it is a fallacious application of the second definition. The court says that
reasonable doubt makes you hesitate to act; therefore, if you hesitate to
act, you have a reasonable doubt. That is like saying, "Pneumonia
makes you cough; therefore, if you cough, you have pneumonia." This
is the logical fallacy called "affirming the consequent."


 If a conscientious juror reads the Geesa charge and follows it literally,
he or she will never convict anyone. Considerations utterly foreign to
reasonable doubt might make a person hesitate to act. The gravity of the
decision and the severity of its consequences should make one pause
and hesitate before doing even what is clearly and undoubtedly the right
thing to do. Judgments that brand men and women as criminals, and
take their money, their liberty, or their lives are deadly serious. They are
decisions that make us hesitate if we have any human feelings or
sensitivity at all. So to convict, a juror must either ignore the definition,
refuse to follow it, or stretch it to say something it does not say.


Paulson, 28 S.W.3d at 572. 

 The Paulson court ultimately overruled 


 that portion of Geesa which requires trial courts to instruct juries on the
definition of "beyond a reasonable doubt." . . . We find that the better
practice is to give no definition of reasonable doubt at all to the jury. 
On the other hand, if both the State and the defense were to agree to give
the Geesa instruction to the jury, it would not constitute reversible error
for the trial court to acquiesce to their agreement.


Id. at 573 (emphasis added).


 Paulson was a jury-charge case, not a jury-argument case. Had the trial court
denied a request by appellant's counsel to include the proffered reasonable-doubt
instruction from Geesa in the jury charge, we would hold that the trial court did not
err. See id. However, appellant did not seek a jury instruction. He instead sought to
explain reasonable doubt by using part of the Geesa definition in jury argument. This
is a materially different situation from that in Paulson.

 Despite this difference, at least one court of appeals has applied Paulson's
reasoning to a jury argument incorporating Geesa's reasonable-doubt instruction. See
Billy v. State, 77 S.W.3d 427 (Tex. App.--Dallas 2002, pet. filed). We agree with
Billy, but find it distinguishable. The Billy court upheld a ruling sustaining an
objection to a jury argument on reasonable doubt. As here, defense counsel in Billy
attempted to explain reasonable doubt to the jury in terms of the Geesa definition. 
See id. at 429-30. However, defense counsel in Billy incorporated the idea of
"hesitancy" from the second and third sentences of the Geesa reasonable-doubt
definition. Id. It was the "hesitancy" aspect of the Geesa reasonable-doubt definition
that the Paulson court had "disavowed" because the definition placed "too great a
burden upon the State," the Billy court concluded. Id. at 430 (relying on Paulson, 28
S.W.3d at 571-72). Because defense counsel had tried to incorporate the rejected
hesitancy definition from Geesa, the Billy court held that there was no error in
sustaining the State's objection to the argument. Id. at 430-31. 


 In contrast to the argument in Billy, defense counsel's argument in this case did
not incorporate the rejected hesitancy portion of Geesa's reasonable-doubt definition. 
Instead, counsel's argument incorporated the portion of the Geesa reasonable-doubt
definition that the Paulson court determined was merely "useless," but which the
court did not reject. See Paulson, 28 S.W.3d at 572. 

 We agree with the Billy court that Paulson's reasoning applies to jury
arguments that incorporate the rejected hesitancy portions of Geesa's reasonable-doubt definition. Therefore, a trial court does not err in sustaining an objection to this
specific jury argument. See Arnold v. State, 68 S.W.3d 93, 102 (Tex. App.--Dallas
2001, pet. ref'd) (holding that defense counsel may not make inaccurate or misleading
statements in argument about State's burden of proof); Grant, 738 S.W.2d at 311
(holding, "Error in the argument does not lie in going beyond the charge, but lies in
stating the law contrary to the same."); cf. Paulson, 28 S.W.3d at 571-72 (concluding
hesitancy aspects of Geesa charge were "troubling," used partially "fallacious" logic,
and required jury to ignore, refuse to follow, or stretch definition to convict).

 However, we decline to extend Billy's (and thus Paulson's) holding to the
situation before us, in which counsel sought to use language from the non-hesitancy
portion of Geesa's reasonable-doubt definition, because the Court of Criminal
Appeals has concluded that that language is merely useless, as opposed to misleading. 
Accordingly, we hold that defense counsel should have been allowed to incorporate
the non-hesitancy portion of the Geesa reasonable-doubt definition into his
argument. (2)

 Any error, however, was cured. Immediately after the trial court's ruling,
defense counsel argued without objection that "you have to use your own imagination
as to what you consider a reasonable doubt. Consider any doubt; then ask yourself:
Is it reasonable that I have that doubt?" This argument is essentially the same as the
portion of the Geesa reasonable-doubt definition that counsel had originally sought
to argue and that the Paulson court had found useless, but not improper. Moreover,
even if counsel had not been allowed to repeat his argument, we would have held that
any error was clearly harmless because (1) the Court of Criminal Appeals has
determined the proffered definition is useless and (2) appellant acknowledges that the
evidence was so overwhelming as to make his guilt a foregone conclusion. See Tex.
R. App. P. 44.2.

 Accordingly, we overrule appellant's second point or error. 


 Conclusion

 We affirm the judgment of the trial court.





 Tim Taft

 Justice


Panel consists of Justices Taft, Alcala, and Price. (3)


Publish. Tex. R. App. P. 47.4.


1. The State claims appellant waived this point of error by failing to object in the
trial court, as well as by failing to raise the issue in a motion for new trial. 
Appellant claims he did not need to preserve this challenge. Given our
disposition, we need not decide whether appellant had to preserve his
challenge.
2. To the extent that sustaining the State's objection prevented counsel from
arguing the entire reasonable-doubt definition from Geesa, the court's ruling
was appropriate. However, the trial court should have allowed defense counsel
to argue the non-hesitancy portion of Geesa's reasonable-doubt definition fully
before stopping the argument.
3. The Honorable Frank C. Price, former Justice, Court of Appeals, First
District of Texas at Houston, participating by assignment.