**Affirmed and Opinion Filed June 28, 2018**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-17-00164-CR**

**No. 05-17-00165-CR**

**RANDY JOHN VALLES, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 416-82997-2015 & 416-82998-2015**

## MEMORANDUM OPINION

Before Justices Bridges, Myers, and Schenck
Opinion by Justice Bridges

A jury convicted appellant Randy John Valles of two counts of indecency with a child by contact and two counts of aggravated sexual assault. Appellant committed one indecency by contact offense against his son, Jeff.[1] He committed the second indecency offense and the two aggravated sexual assault offenses against his son, Phillip. The trial court assessed concurrent sentences of ten years' confinement on each indecency offense and twenty years' confinement on each aggravated sexual assault.

Appellant raises six issues on appeal. In his first four issues, he challenges the sufficiency of the evidence to support his convictions. In his fifth issue, he argues the trial court abused its

---

[1] We have changed the names of the children involved to protect their identities and privacy. TEX. R. APP. P. 9.8.

discretion by determining the children were competent to testify. In his final issue, he argues the State improperly commented on his non-testimonial courtroom demeanor during punishment. We affirm.

## Background

The background of this case is known to the parties. Given the sensitive nature of the facts of this case, we provide only those necessary for disposition of the appeal. TEX. R. APP. P. 47.1.

Appellant and Wife married in 1992 and have four children together: Sara (sixteen-year-old daughter), Phillip (fifteen-year-old son), and Jeff and Will (eleven-year-old twin sons).[2] Each of the children suffer from various mental disorders requiring psychological therapy and medications.

Appellant and Wife separated in 2011, and he moved to West Texas. From that time forward until the time of trial, appellant did not have any contact with the children. Their divorce was finalized in 2013.

The children's Grandmother lived with Wife and the children and helped with their care. It was no secret Grandmother did not like appellant.

Jeff first made an outcry of sexual abuse to Grandmother in 2013 (he was eight-years-old), and Grandmother told Wife. CPS and the police began an investigation. Jeff participated in a forensic interview at the Children's Advocacy Center of Collin County where he described sexual contact by appellant.

Sara and Phillip were also interviewed in 2013, but neither made any allegations of abuse. Sara did not make an outcry until a forensic interview in 2014. In 2015, Phillip made allegations of sexual abuse by appellant.

---

[2] Ages reflect how old the children were at the time of trial.

Charges were eventually filed against appellant for sexually abusing Sara, Phillip, and Jeff on or about January 1, 2010. The jury found appellant guilty of two counts of indecency with a child by contact (one against Phillip and one against Jeff) and two counts of aggravated sexual assault (both against Phillip). It acquitted appellant of the offenses against Sara, specifically indecency by contact and aggravated sexual assault. The trial court assessed concurrent sentences of ten years' confinement on each indecency offense and twenty years' confinement on each aggravated sexual assault. This appeal followed.

## Complainants' Competency

In his fifth issue, appellant argues the trial court abused its discretion by concluding the children were competent to testify. The State responds the children's testimony, along with their doctor's and therapists' testimony, confirmed their cognitive ability to testify; therefore, appellant failed to sustain his burden of rebutting the presumption of competence.

Generally, every person is presumed competent to testify. TEX. R. EVID. 601(a). However, a person, such as a child, is not competent to testify if, upon examination by the trial court, the court finds that the person "lacks sufficient intellect to testify concerning the matters in issue." TEX. R. EVID. 602(a)(2).

The trial court does not have a duty to conduct a sua sponte preliminary competency examination of a child witness. *Baldit v. State*, 522 S.W.3d 753, 761 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Instead, the party seeking to exclude the witness from testifying must raise the issue of competency and "shoulders the burden of establishing incompetency." *Gilley v. State*, 418 S.W.3d 114, 120 (Tex. Crim. App. 2014). The competency of a child witness is a preliminary question for the trial court to determine under rule of evidence 104(a), and the court is not bound by the rules of evidence in making this determination. *Id*. at 121.

When a party challenges the competency of a child witness, the trial court must consider whether the child witness possesses (1) the ability to intelligently observe the events in question at the time of the occurrence, (2) the capacity to recollect the events, and (3) the capacity to narrate the events. *Baldit*, 522 S.W.3d at 761. The third element involves the ability to understand the moral responsibility to tell the truth, to understand the questions posed, and to frame intelligent answers. *Id.* The child need not understand the "obligation of the oath," but the trial court "must impress the child with the duty to be truthful." *Id.* There is no precise age under which a child is deemed incompetent to testify. *Id.*

Once the issue of competency is raised, the trial court must make "an independent ruling on competency." *Gilley*, 418 S.W.3d at 121. We review a trial court's determination of whether a child is competent to testify for an abuse of discretion. *Broussard v. State*, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995). We consider the child's responses to qualification questions as well as the child's entire testimony in reviewing the trial court's ruling. *Baldit*, 522 S.W.3d at 761.

The defense presented the testimony of Dr. Pradeep Kumar, a board certified psychiatrist responsible for treating Phillip and Sara. Although he testified some of the medications they took could, in rare instances cause side effects such as hallucinations or confusion, he never saw such side effects in the children. The children testified they never experienced any negative side effects. Rather, the medications helped them to concentrate and better function than if they did not take them.

Lisa Martinez, a forensic interviewer at the Children's Advocacy Center of Collin County, testified regarding her observations of Jeff and Phillip during her interviews with them in August 2011[3] and later in 2015 and 2016. Based on her prior experience interviewing the children, she believed the boys were on the autism spectrum. However, nothing about their behavior concerned

---

[3] Interviews were conducted in 2011 because of suspected physical abuse.

–4–

her regarding the accuracy of their memory, there reliability as witnesses, or their ability to understand the obligation to tell the truth.

Michelle Lanier, another forensic interviewer with the Children's Advocacy Center, interviewed Sara for the first time when she was eleven. During the interview, Sara described her family as "crazy," but when pressed about what she meant, she said, "Well, my brothers have autism." Although she said in one interview that whether it was important to tell the truth depended on the situation, Lanier was "not necessarily" concerned by her answer. Lanier described Sara as mature and articulate for her age. Sara was capable of observing and recollecting events.

When Sara testified, she agreed it was bad to lie, but again said sometimes there are exceptions. She explained that if a friend asked if an outfit looked bad, she might lie and say no because it was not "very important." She promised, however, to tell the truth about everything, even if it did not seem important, while in court. She further understood the consequences of lying and said she would get in "a lot" of trouble for lying in court.

Abigail Hill, a licensed therapist, testified regarding her treatment of Jeff. Jeff had seen Hill for therapy for about a month. She explained Jeff fell "on the edge of mild to moderate" on the autism spectrum, meaning he needs someone to help him read social cues because he lacks general awareness of nuances in nonverbal communication. She admitted an extremely severe diagnosis could impact an autistic child's ability to recollect or communicate past events, but a high-functioning individual like Jeff would not be affected. In fact, she testified autism does not affect a person's ability to know right from wrong.

Jeff testified he knew the difference between the truth and a lie and acknowledged the importance of telling the truth in a courtroom. When asked, "Is it something you think you can do?," he answered, "Yes." He further promised to tell only things that were true regarding things he personally observed or felt. Although Jeff showed some confusion when defense counsel

questioned him about who had recently touched him inappropriately, any confusion went to credibility rather than competency. *See Hogan v. State*, 440 S.W.3d 211, 217 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) ("Although some of complainant's responses were confusing and inconsistent, a witness is not rendered incompetent merely because there are inconsistencies in her testimony.").

Molly McAsham, a therapist who had worked with the children off and on for about ten years, described Phillip as "moderate severity" on the autism spectrum. His autism did not limit his ability to observe or recall events around him or to know right from wrong. Rather, "He's able to answer questions about previous life events and give details about approximate times and orders of events." They had discussed the difference and importance between telling the truth and a lie, but they had not discussed it in the context of the courtroom.

When Phillip testified, he said he knew the difference between a truth and a lie. He acknowledged it was bad to tell a lie and that a person could get in trouble for it. The State asked him, "When you're in the courtroom like this, can you promise to only tell things that are truths?" and he answered, "Yes." He promised to only tell things that really happened.

Defense counsel argued the children should be disqualified because they "are mentally ill" and "developmentally delayed." Counsel emphasized the medications they took and argued the court could not be certain the children "really understand what they are doing and are really prepared to tell the truth and are really going to keep that promise." The State responded the defense did not overcome the presumption of competency. The court agreed and denied appellant's motion "[b]ased upon the Court's observation of the witnesses and the testimony from the experts."

At trial, Sara testified she knew the difference between a truth and a lie. She acknowledged lying was "a bad thing" that could get her in trouble. She promised everything she said in the

courtroom would be the truth about things that actually happened. She again emphasized her medications did not cause her any confusion or affect her memory. Although defense counsel questioned her "flashbacks" and "repressed memories" about her own sexual abuse, thereby attempting to tarnish her credibility in general, this was a credibility determination for the jury.

Jeff also testified at trial that he understood the difference between a truth and a lie. He promised to only tell the truth.

Phillip explained the truth was something that can be proven and a lie is something false that cannot be proven. He understood telling a lie was a "bad thing" and could get someone in trouble. He promised to tell the truth about everything he discussed in court.

After considering the children's responses to qualification questions as well as their entire testimony, each child demonstrated the ability to intelligently observe the events in question at the time of the occurrence, the capacity to recollect the events, and the capacity to narrate the events. *See Baldit*, 522 S.W.3d at 761. Further, the children expressed both during the competency hearing and at trial the moral responsibility to tell the truth. *Id*. Therefore, the trial court did not abuse its discretion by concluding Sara, Phillip, and Jeff were competent to testify. Appellant's fifth issue is overruled.

### Sufficiency of the Evidence

In his first four issues, appellant challenges the sufficiency of the evidence to support his convictions for indecency with a child and aggravated sexual assault of a child.[4] He claims Grandmother or Wife manipulated the children into falsely accusing him of sexual abuse. Further, he asserts the evidence is legally insufficient because of the children's mental conditions, the inconsistencies in their testimony, and the number of years and repeated interviews it took to illicit

---

[4] We have thoroughly read and examined the record in this case, as required under a legal sufficiency review; however, we see no need to expose the children to further or future emotional harm that could occur by having repugnant details about their lives included in a public opinion. Accordingly, we have included only those facts necessary for disposition of this appeal and refrain from recounting these offenses in unsavory detail. *See* TEX. R. APP. P. 47.1 (court should hand down an opinion that is as brief as practicable but addresses every issue raised).

an outcry. The State responds the jury was free to resolve inconsistencies in the children's testimony against appellant, to reject his theory Grandmother or Wife manipulated them, and to find the children's testimony credible.

In reviewing the legal sufficiency of the evidence, we review the evidence in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The inquiry is whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Billy v. State*, 77 S.W.3d 427, 428 (Tex. App.—Dallas 2002, pet. ref'd). The trier of fact is the sole judge of witness credibility and the weight to be given their testimony. *Id*. at 429. The trier of fact may choose to believe or disbelieve all or any part of any witness's testimony. *Id*.

Here, Phillip's testimony supports each separate count alleged in the indictment, which tracked the statutory language of the penal code. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(iv) (West Supp. 2017); § 22.021(a)(1)(B)(v) (West Supp. 2017); § 21.11(a)(1), (c)(1) (West Supp. 2017). Further, the testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07; *Revels v. State*, 334 S.W.3d 46, 52 (Tex. App.—Dallas 2008, no pet.). "The victim's description of what happened to [him] need not be precise, and [he] is not expected to express [himself] at the same level of sophistication as an adult." *Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi 2008, no pet.). A child victim's testimony is liberally construed and, "as long as the child communicates to the factfinder that the touching occurred on a part of the body within the definition of the statute, the evidence will be sufficient." *Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

Phillip also provided the same information during a forensic interview with Martinez in 2015. During cross-examination, defense counsel thoroughly questioned Martinez about her questioning technique and implied she used leading questions. She explained, however, she used

prompted questions, meaning she asked more follow-up questions in order for him to understand context. She acknowledged Phillip's outcry was delayed, but explained it was typical for children not to disclose immediately and "disclosure is a process."

Dan Powers, the senior vice president and clinical director of Collin County's Children's Advocacy Center, also explained "we are not going to make the children talk." It often takes children time to trust an adult and open up about the "most shameful, scary thing a child can experience." He testified it is the "most common" for children to disclose sexual abuse long after it happened, if they disclose at all. Therefore, it was not concerning to see a child who first denied sexual abuse and years later disclosed it.

To the extent appellant argues Phillip's testimony at trial differed from Martinez's testimony, this contradiction simply raised issues of credibility and questions of fact. That is, it simply provided the jury with an opportunity to exercise one of its inherent powers, that being the power to decide who and what to believe. *Billy*, 77 S.W.3d at 428. Undoubtedly, it chose to believe the version of events Phillip told Martinez during the forensic interview. *See Anden v. State*, No. 07-16-00180-CR, 2016 WL 7187465, at *3 (Tex. App.—Amarillo Dec. 9, 2016, no pet.) (mem. op., not designated for publication) (concluding evidence sufficient despite victim providing differing accounts of sexual abuse at trial than what she previously told forensic interviewer).

A conviction may be based on contradictory evidence. *Id.* Consequently, some evidence appears in the record supporting appellant's convictions. After reviewing the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found the elements of all three offenses beyond a reasonable doubt. *Billy v. State*, 77 S.W.3d 427, 428 (Tex. App.— Dallas 2002, pet. ref'd).

Jeff's testimony likewise supports the offense as charged in the indictment, which tracked the statutory language of penal code section 21.11(a)(1), (c)(1). *See* TEX. PENAL CODE ANN. § 21.11(a)(1), (c)(1). Martinez also testified to the sexual contact Jeff described during his forensic interviews. Reviewing the evidence in the light most favorable to the verdict, a reasonable jury could have found appellant guilty of the charged offense.

In reaching this conclusion, we are unpersuaded by appellant's claims the children were manipulated by Grandmother or Wife or that the children's mental conditions and medications hindered their credibility. The jury saw Wife, Sara, Phillip, and Jeff testify. Dr. Kumar explained the various drugs prescribed to the children and possible side effects. Dr. Kumar, the children, and Wife all testified the medications did not cause any adverse side effects to their mental abilities to comprehend and recall events. Again, these were credibility issues for the jury to decide. *See Billy*, 77 S.W.3d at 428. We overrule appellant's first four issues.

### Appellant's Courtroom Demeanor

In his sixth issue, appellant argues the trial court abused its discretion by overruling his objection to the State's punishment closing argument because the prosecutor improperly commented on appellant's non-testimonial demeanor. The State responds the prosecutor's argument was not improper, or alternatively, any error was harmless.

After the jury returned its guilty verdicts, the trial court held the punishment hearing. During defense counsel's closing argument, counsel reminded the trial court that "at one point, the State felt that eight years was adequate in this matter . . . I understand that that day has passed . . . ." During its closing argument, the State responded:

> Your Honor, as the Court is well aware, plea bargain agreements are offered for a reason. And I think throughout this case, the way the testimony came out, it was obvious why the eight-year offer was made. And it was because of the nature of the victims in this case. The Court has seen hundreds of these types of cases, but I think that what [Phillip] showed on the witness stand this week during the trial

> was nothing short of traumatizing for everybody who saw it. However, during his testimony, the person in the courtroom who did not show any emotion whatsoever was the defendant himself. That's his own child, his own 15-year-old son, seeing him struggle - -

Defense counsel objected to "any appeal to the non-testimonial demeanor of the defendant." The trial court overruled the objection.

A trial court has broad discretion in controlling the scope of closing argument, and the State "enjoys wide latitude in drawing inferences from the evidence." *Nickerson v. State*, 478 S.W.3d 744, 761 (Tex. App.—Houston [1st Dist.] 2015, no pet.). We review the trial court's ruling on an objection to the Sate's argument for an abuse of discretion. *Vasquez v. State*, 484 S.W.3d 526, 531 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

In reviewing the ruling, we first determine whether the argument was improper. *Nickerson*, 478 S.W.3d at 761. There are four permissible areas of closing argument: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, and (4) a plea for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 116 (Tex. Crim. App. 2000). A defendant's nontestimonial demeanor does not fall within one of these approved areas. *See Good v. State*, 723 S.W.2d 734, 736 (Tex. Crim. App. 1986); *see also Cherry v. State*, No. 04-01-0046-CR, 2002 WL 31272364, at *2 (Tex. App.—San Antonio Sept. 30, 2002, no pet.) (not designated for publication) (concluding State made improper jury argument during punishment by stating, "Does she look very upset . . ."); *Anguiano v. State*, No. 05-92-01065-CR, 1993 WL 438181, at *4 (Tex. App.—Dallas Oct. 26, 1993, no pet.) (not designated for publication) ("Now, the defendant who has been smirking throughout this whole trial, including our closing arguments, you've seen it, he doesn't think a whole lot about the law," was an improper comment during punishment regarding defendant's nontestimonial demeanor). Therefore, the prosecutor's comment referring to appellant's nontestimonial demeanor was improper.

–11–

Because we have concluded the statement was improper, we consider harm. *Nickerson*, 478 S.W.3d at 761. As non-constitutional error, improper argument is harmful only if it affects the defendant's substantial rights. TEX. R. APP. P. 44.2(b); *see Brown v. State*, 270 S.W.3d 564, 573 (Tex. Crim. App. 2008). To determine whether the defendant's substantial rights were affected by improper jury argument, we consider the following three factors: (1) the severity of the misconduct; (2) the measures adopted to cure the misconduct; and (3) the certainty of conviction absent the misconduct. *Gallo v. State*, 239 S.W.3d 757, 769 (Tex. Crim. App. 2007).

Although the State's argument was improper, it did not make any other improper comments after the objection. Further, the statement was made to the trial judge, who was unlikely affected by any impropriety. The trial court ultimately assessed significantly less of a punishment than the State asked for further indicating the improper conduct did not impact appellant's substantial rights.[5] Accordingly, the State's improper argument was harmless. We overrule appellant's sixth issue.

## Conclusion

Having overruled appellant's issues, we affirm the trial courts' judgments.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.
170164F.U05

---

[5] The State asked the court to assess a twenty-year sentence for each indecency offense and assess between thirty-five to forty years for each aggravated sexual assault charge.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

RANDY JOHN VALLES, Appellant

No. 05-17-00164-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas
Trial Court Cause No. 416-82997-2015.
Opinion delivered by Justice Bridges.
Justices Myers and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered June 28, 2018.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RANDY JOHN VALLES, Appellant

No. 05-17-00165-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas
Trial Court Cause No. 416-82998-2015.
Opinion delivered by Justice Bridges.
Justices Myers and Schenck participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered June 28, 2018.